SEARS LOGISTIC SERVICES,
Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (PRES-
TON), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2007.

Decided Dec. 5, 2007.

Sharolyn L. Murphy, Philadelphia, for petitioner.

Howard P. Rovner, Feasterville, for respondent.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Sears Logistic Services (Employer) petitions for review of the March 6, 2007, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) denying Employer's termination petition. For the reasons that follow, we vacate and remand.

On January 7, 1993, while operating a tug machine in Employer's warehouse, John Preston (Claimant) stepped in a pothole, twisted his right leg and fell on all fours on a concrete floor. Employer accepted liability for the work injury by way of a Notice of Compensation Payable (NCP) that described the injury as "bruised knees." By decision and order dated October 7, 1996, Claimant's benefits were reduced from total to partial disability. Thereafter, a decision and order dated April 30, 2004, adopted a stipulation between the parties and reinstated Claimant's benefits to total disability effective April 2, 2004. On June 6, 2005, Employer

filed a termination petition alleging that Claimant had fully recovered from his work injury as of May 17, 2005. Claimant filed a timely answer, and the matter proceeded to hearings before the WCJ.

Employer presented the deposition testimony of John Duda, M.D., who is board certified in orthopedic surgery. Dr. Duda examined Claimant at Employer's request on May 17, 2005. Dr. Duda testified that Claimant described the mechanics of his work injury, provided a medical history and complained of pain in his knees and right shoulder. Dr. Duda provided details of his physical examination of Claimant, stating that Claimant's description of his knee pain was consistent with arthritic changes rather than trauma or injury and reporting that Claimant's shoulder was normal, with no atrophy, swelling, fluid, instability or tenderness.

Dr. Duda testified that Claimant's medical records, including x-rays and MRI and operative reports, documented moderately advanced degenerative changes in Claimant's knees and right shoulder. Dr. Duda's impression was that Claimant sustained bruises and/or strains to both knees and a strain to his right shoulder in the 1993 work injury, and Dr. Duda stated that Claimant's work injury did not cause or aggravate Claimant's degenerative condition. Dr. Duda admitted it was conceivable that Claimant sustained a tear in his knees in 1993; however, he stated that traumatically related meniscal tears are almost always radial, while Claimant's medical records reflected a horizontal tear that was degenerative in nature.

Dr. Duda opined that, at the time of his May 17, 2005, examination, Claimant was fully recovered from the work injury. He testified that none of Claimant's ongoing symptoms could possibly be related to a contusion, sprain, strain or old, resected, meniscal tear.

Claimant presented the deposition testimony of Gary W. Muller, M.D. Dr. Muller, who is board certified in orthopedic surgery, stated that he treated Claimant for approximately ten years prior to the 1993 work injury, during which Claimant had no complaints of knee pain. Dr. Muller testified that he examined Claimant on January 21, 1993, and his initial impression was a medial meniscus tear of the right knee and a possible medial meniscus tear and degenerative changes in the left knee. Dr. Muller stated that Claimant also complained of pain in his right shoulder at the deltoid muscle and subacromial bursa and had difficulty with extreme ranges of motion in that shoulder.

Dr. Muller testified concerning six surgeries he performed on Claimant, three arthroscopies on each knee. He stated that the first surgery, on March 12, 1993, was an arthroscopy, a meniscectomy and a chondral shaving to the right knee, and the second surgery, on May 21, 1993, was to correct a tear of the medial meniscus and degenerative changes in the left knee. Dr. Muller testified that he performed additional arthroscopies on Claimant's right knee on January 16, 1998, and October 29, 2003, and additional arthroscopies on Claimant's left knee on September 5, 1997, and August 1, 2003. Dr. Muller explained that when a patient has a meniscus tear, surgery to resect the meniscus results in a loss of cartilage, and the loss of cartilage, in turn, causes the development of more arthritic changes. He stated that Claimant suffered meniscus tears and developed further degenerative changes because of the progressive process associated with the loss of cartilage. Dr. Muller testified that Claimant presently needs knee replacement on the left side and will eventually need knee replacement on the right side.

Addressing Claimant's shoulder injury, Dr. Muller testified that an MRI scan revealed impingement and fraying of the rotator cuff as well as degenerative changes. He stated that Claimant's shoulder symptoms have persisted for ten years and that Claimant is unable to engage in any type of overhead work.

On cross-examination, Dr. Muller agreed that Claimant had fully recovered from contusions to the right knee, left knee and shoulder. He also agreed that MRIs of Claimant's knees dated February 10, 1993, and March 1, 1993, reflected degenerative changes in Claimant's knees that existed prior to the work injury.[1] Dr. Muller acknowledged that Claimant was obese and that obesity can hasten degeneration of the knees. Finally, Dr. Muller testified that Claimant's work injury, obesity and pre-existing arthritis each contributed to Claimant's current condition, although he was unable to ascribe a percentage of causation to each contributing factor.

The WCJ accepted Dr. Muller's testimony as credible and convincing, noting that Dr. Muller had treated Claimant for many years before and after the work injury and that Dr. Muller's opinions were supported by objective findings and diagnostic tests. The WCJ rejected Dr. Duda's testimony as unpersuasive to the extent that his opinions were inconsistent with those of Dr. Muller. The WCJ noted that Employer bore the burden of proving that Claimant had fully recovered from the work injury. The WCJ further noted that the accepted work injury is "bruised knees," a condition that both medical experts agreed has resolved. However, citing *City of Philadelphia v. Workers' Compensation Appeal Board (Fluek)*, 898 A.2d 15 (Pa.Cmwlth.), *appeal denied*, 590 Pa. 662, 911 A.2d 937

(2006), the WCJ concluded that there is a reasonable nexus or obvious relationship between the accepted work injury and Dr. Muller's diagnoses of torn medial menisci and resultant progressive arthritis in both knees. In addition, the WCJ noted Dr. Duda's acknowledgment that Claimant's work injury included a strain of the right shoulder. The WCJ concluded that Employer failed to meet its burden of proving that Claimant had fully recovered from work injuries sustained on January 7, 1993, and denied Employer's termination petition.

Employer appealed to the WCAB, asserting, *inter alia*, that the WCJ erred in: (1) concluding that Employer failed to meet its burden of proof; (2) shifting the burden to Employer to disprove a causal relationship between the work injury and the meniscal tears and arthritis; (3) amending the description of the work injury where Claimant failed to file a review petition; (4) determining that a meniscal tear and resulting arthritis bear a reasonable nexus or obvious relationship to bruised knee injury; and (5) failing to apply a substantial contributing factor analysis where non-work-related factors caused Claimant's disability. (R.R. at 205a.) Quoting *Ohm v. Workmen's Compensation Appeal Board (Caloric Corp.)*, 663 A.2d 883, 885 (Pa.Cmwlth.1995) ("section 413 of the Act empowers a WCJ to take appropriate action as indicated by the evidence"), and citing *Krumins Roofing and Siding v. Workmen's Compensation Appeal Board (Libby)*, 133 Pa.Cmwlth.211, 575 A.2d 656 (1990) (a WCJ may draw reasonable inferences from the evidence presented), the WCAB affirmed the WCJ's decision.[2] Employer now appeals to this

---

1. The reports of the February 10, 1993, and March 1, 1993 MRIs also indicate a medial

meniscus tear in each knee. (R.R. at 146a–47a.)

2. The preceding sentence is not a brief sum-

court.[3]

An employer seeking to terminate benefits bears the burden of proving that a claimant's disability has ceased or that any remaining disability is no longer the result of a work-related injury. *Indian Creek Supply v. Workers' Compensation Appeal Board (Anderson)*, 729 A.2d 157 (Pa. Cmwlth.1999), *appeal denied*, 563 Pa. 622, 757 A.2d 936 (2000). Here, Employer argues that it was entitled to a termination of benefits because both medical experts agreed that Claimant had fully recovered from bruised knees and a right shoulder strain, the accepted 1993 work injury.[4] Relying on *City of Philadelphia v. Workers' Compensation Appeal Board (Smith)*, 860 A.2d 215 (Pa.Cmwlth.2004), Employer also argues that the WCJ erred by implicitly modifying the NCP to include additional injuries in the nature of meniscal tears and arthritis where Claimant never filed a review petition seeking to amend the NCP.

In *Smith*, the employer issued an NCP describing the claimant's injury as a "lower back strain." Subsequently, the employer filed a termination petition, asserting that the claimant had fully recovered. During the termination proceeding, the claimant's medical expert testified that the

claimant suffered from post-traumatic lumbar radiculopathy and herniated discs and likely would be unable to resume any medium or heavy labor job. Relying on that testimony, the WCJ denied the termination petition and, in doing so, redefined the claimant's injury to include post-traumatic lumbar radiculopathy and herniated discs. The WCAB affirmed.

On appeal in *Smith*, this court reversed. Considering the second paragraph of section 413(a) of the Workers' Compensation Act (Act),[5] we reasoned that, before the radiculopathy and herniated discs could be found compensable, it was incumbent upon the claimant to file either a review petition to amend the NCP or a claim petition to establish a causal connection between the additional injuries and the work accident. We determined that, in the absence of either petition, the credible testimony of the claimant's medical expert was irrelevant to the issue raised in the termination petition, i.e., whether the claimant recovered from the back "strain" accepted by the employer in the NCP. Moreover, because there was no evidence that the alleged additional injuries existed at the time the NCP was issued, we held that our decision in *Samson Paper Company & Fidelity Engraving v. Worker's Compen-*

---

mary of the WCAB's decision, but, rather, represents the entirety of the WCAB's analysis. This court is at a loss to understand how the WCAB can perceive such an analysis to be sufficient consideration of the numerous issues raised by Employer on appeal.

3. Our scope of review is limited to determining whether constitutional rights were violated, whether the decision is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Based on Dr. Duda's testimony, Employer does not dispute that Claimant sustained a

right shoulder strain during the 1993 work incident.

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. In relevant part, the second paragraph of section 413(a) states as follows:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award ... *upon petition filed by either party* with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased....

77 P.S. § 772 (emphasis added).

*sation Appeal Board (Digiannantonio)*, 834 A.2d 1221 (Pa.Cmwlth.2003), did not provide the WCJ in *Smith* authority to amend the NCP.

In *Samson Paper*, the employer issued an NCP accepting liability for a neck and back strain. Thereafter, the employer filed a termination petition, and during the course of the termination proceedings the claimant presented medical testimony indicating that she also sustained bilateral carpal tunnel syndrome as a result of the work incident. The WCJ credited the testimony of the claimant's medical expert, concluded that the claimant met her burden of proving that she suffered a carpal tunnel injury as a result of the work incident and added carpal tunnel syndrome to the description of the accepted work injury. After the WCAB affirmed, the employer appealed to our court, arguing *inter alia* that the WCJ erred in amending the description of the injury where the claimant had not filed a petition alleging that additional injury.

The court in *Samson Paper* considered the first paragraph of section 413(a) of the Act, 77 P.S. § 771, which provides as follows:

A workers' compensation judge may, *at any time,* review and modify or set aside a notice of compensation payable and an original or supplemental agreement *or upon petition filed by either party* with the department, *or in the course of the proceedings under any petition pending before such workers' compensation judge,* if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771 (emphasis added).

We recognized that this provision allows a WCJ to amend an NCP in the course of proceedings on a termination petition and in the absence of a petition filed by a claimant. In addition, we emphasized in *Samson Paper* that, in order for the first paragraph of section 413(a) to apply, the mistake in the NCP must relate to a fact or condition that existed when the NCP was executed. Because the claimant in *Samson Paper* proved that, at the NCP was issued, she suffered carpal tunnel syndrome as a result of the work injury, we affirmed the decision of the WCAB.

We distinguished *Samson Paper* in *Smith* because the radiculopathy and herniated discs at issue in *Smith* were conditions separate and distinct from the back strain recognized in the NCP *and there was no evidence in the record that those conditions existed when the NCP was issued.* We also noted in *Smith* that the WCJ did not specifically conclude that the claimant had satisfied her burden of proving that the additional injuries were caused by the work accident and did not expressly find that the NCP issued by the employer was materially incorrect.[6]

██ Although we conclude that neither case is controlling, we find both *Smith* and *Samson Paper* instructive in the present appeal. As in *Samson Paper*, Claimant here presented medical evidence indicating that Claimant suffered meniscal tears in each knee and an injury to his right shoul-

---

6. Employer erroneously interprets our decision in *Smith* as well as the supreme court's recent decision in *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 883 A.2d 579 (2005), as holding that the filing of a review petition is *always* a prerequisite to the WCJ's authority to amend the description of injury in an NCP. The claimants in *Smith* and *Westinghouse* presented no evidence that there was a material mistake in the NCP at the time it was issued, and, therefore, relief under the first paragraph of section 413(a), 77 P.S. § 771, was not available to those claimants.

der as a result of the work injury on January 7, 1993. Because Claimant's evidence also indicated that these conditions existed at the time the NCP was issued, the WCJ was authorized by the first paragraph of section 413(a) of the Act to amend the description of Claimant's work injuries in the course of the termination proceeding. However, as in *Smith,* the WCJ here did not specifically conclude that Claimant satisfied his burden of proof under section 413(a), 77 P.S. § 771, or even acknowledge that Claimant had such a burden. In addition, the WCJ made no express finding that the NCP issued by Employer was incorrect at the time it was issued.

██ Where, as here, the WCJ fails to make findings necessary for the proper application of the law, a remand is warranted. *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Hamilton),* 95 Pa.Cmwlth.594, 505 A.2d 1372 (1986).

Accordingly, we vacate the WCAB's decision and remand this matter to the WCAB with instructions for further remand to the WCJ for additional findings and conclusions based upon the evidence presented and the law as set forth herein.

### ORDER

AND NOW, this 5th day of December, 2007, the order of the Workers' Compensation Appeal Board, dated March 6, 2007, is vacated, and this case is remanded in accordance with the foregoing opinion.

Jurisdiction relinquished.