975 A.2d 577

**CINRAM MANUFACTURING, INC.
and PMA Group, Appellants**

v.

**WORKERS' COMPENSATION APPEAL
BOARD (HILL), Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 2008.

Decided July 21, 2009.

Sheilah Anne Siobhan Tone, Esq., Swartz Campbell, L.L.C., Scranton, for Cinram Manufacturing, LLC and PMA Group.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., for Workers' Compensation Appeal Board.

Edward F. Pietrowski, Esq., Pietrowski & Pietrowski, P.C., Scranton, for Brian Hill.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

**OPINION**

Justice SAYLOR.

Appeal was allowed primarily to address whether, during a termination proceeding, a workers' compensation judge may correct a notice of compensation payable to subsume injuries not specifically contemplated by the original notice. The question arises because, on the one hand, governing statutory provisions plainly direct that a notice of compensation payable may be corrected at any time and in the context of any petition filed by either of the parties. *See* 77 P.S. § 771. However, the opinion in *Jeanes Hospital v. WCAB (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005), suggests a review petition must be filed by the claimant as a necessary prerequisite to such an amendment.

In March 2004, the appellee, Brian Hill ("Claimant"), sustained a work-related injury, or, more precisely, an aggravation of a pre-existing medical condition, while in the employ of appellee, Cinram Manufacturing, Inc. ("Employer"). Employer issued a notice of compensation payable (the "NCP") identifying the injury as "lumbar strain/sprain," and Claimant received workers' compensation benefits. In August 2004, Employer filed a petition to terminate these benefits alleging a full recovery, which Claimant disputed.

The parties presented conflicting evidence to a workers' compensation judge (the "WCJ"). Significantly, Claimant's evidence supported the finding of an aggravation of a pre-existing disc herniation resulting in nerve impingement, medical conditions beyond the lumbar strain and/or sprain which was the subject of the notice of compensation payable. The WCJ credited Claimant's evidence, denied termination, and directed amendments to the NCP to conform it to his findings. In this effort, the WCJ did not reference *Jeanes Hospital.*

Employer lodged an appeal in the Workers' Compensation Appeal Board. Included among its claims was the argument that the WCJ lacked authority to amend the NCP, because

Claimant never filed a petition to review it. *See Jeanes Hosp.*, 582 Pa. at 421, 872 A.2d at 169 (indicating that, where a notice of compensation payable does not correctly reflect the actual injury or enumerate all of the injuries sustained in a work-related incident, "a claimant must file a Petition to Review Notice of Compensation Payable, which is treated like a claim petition"). The Board affirmed, holding that the NCP was properly amended under Section 413(a) of the Workers' Compensation Act,[1] which authorizes modification of a notice of compensation payable at any time upon proof of an inaccuracy, as follows:

> A workers' compensation judge may, *at any time*, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, *or in the course of the proceedings under any petition pending before such workers' compensation judge*, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771 (emphasis added). The Board referenced *Jeanes Hospital* in support of its decision, but did not discuss the language discussing the requirement of a review petition filed by the claimant.

On further appeal, a divided three-judge panel of the Commonwealth Court affirmed. *See Cinram Mfr'g, Inc. v. WCAB (Hill)*, 932 A.2d 346 (Pa.Cmwlth.2007). The majority applied the plain language of Section 413(a), *see id.* at 348–49; whereas, the dissent invoked the review-petition requirement, as supported by the pertinent language in *Jeanes Hospital*. *See Cinram Mfr'g*, 932 A.2d at 349 (Pellegrini, J., dissenting).

We allowed appeal primarily to address the correctness of *Jeanes Hospital's* directive as applied to corrective amendments. Our present, plenary review of this legal issue is encompassed within the appellate standard of review pertaining to administrative adjudications. *See Griffiths v. WCAB*

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1; 2501–2626).

*(Seven Stars Farm, Inc.),* 596 Pa. 317, 328–29, 943 A.2d 242, 248–49 (2008).

## I.

■ Employer relies on *Jeanes Hospital* and *Commercial Credit Claims v. WCAB (Lancaster),* 556 Pa. 325, 728 A.2d 902 (1999), to support the requirement of a review petition. Employer highlights the concern, attributed to *Commercial Credit,* that, if a workers' compensation judge is permitted to amend a notice of compensation payable to add injuries in the course of any proceeding, then a claimant will remain perpetually eligible to receive compensation by serially and belatedly alleging new injuries. *See id.* at 332–33, 728 A.2d at 905. Employer develops this line of argument as follows:

> Increasingly, defense counsel is seeing claimants defending against termination by presenting medical testimony of injury to a completely different body part. As a result, employers are put in the untenable position of attempting to " 'prove a negative' by establishing that the [new injury] bore no causal relationship to the work-related accident", which is not only "fundamentally unfair", but also effectively reverses the claimant's long-settled burden to prove all elements of a claim. As a practical matter, the employer may have no choice but to withdraw the termination petition and petition the [j]udge to compel the claimant's attendance at another independent medical examination which addresses the newly implicated body part. Such Order is discretionary with the judge regardless of the time which has elapsed since the previous examination, so, at a minimum, alleging a new injury in termination proceedings indefinitely prolongs the claimant's receipt of benefits.

Brief for Employer at 16 (quoting *Commercial Credit,* 556 Pa. at 332, 728 A.2d at 905 (citations omitted)).

Claimant's response centers on the plain language of Section 413(a). He distinguishes *Jeanes Hospital* factually, on the ground that the claimant there had filed a petition to review a notice of compensation payable describing injuries to the lower back to subsume a shoulder injury, a thoracic

condition, fibromyalgia, and depression. *See Jeanes Hospital,* 582 Pa. at 408, 872 A.2d at 160. One of Claimant's perspectives is that the lumbar sprain/strain described in the notice of compensation payable is sufficiently similar to disc herniation and nerve impingement in the lower-back area to justify a departure from *Jeanes Hospital's* prescription for a specialized petition filed by the claimant. More broadly, Claimant attempts to draw a bright-line distinction between adding an injury, even where the additional injury was present as of the issuance of the notice of compensation payable, and correcting a notice. *See* Brief for Claimant at 15 ("It is only when the [notice of compensation payable] does not reflect all of the actual injuries sustained by a claimant in a work-related accident, or does not enumerate all of the injuries sustained in a work-related incident that a claimant must file a petition to review notice of compensation payable.").[2]

Apparently in the alternative, Claimant advances a line of reasoning found in *Sears Logistic Services v. WCAB (Preston),* 937 A.2d 1151 (Pa.Cmwlth.2007). There, the Commonwealth Court indicated that Section 413(a) permits a WCJ to amend a notice of compensation payable in the context of any proceeding initiated by either party if it is proven that the mistake in the notice relates to a fact or condition existing at the time of the notice's issuance. *See id.* at 1155 (citing *Samson Paper Co. & Fidelity Engraving v. WCAB (Digiannantonio),* 834 A.2d 1221 (Pa.Cmwlth.2003)). According to Claimant, a claimant may be deprived of relief under Section

2. Claimant's approach in this regard is somewhat confusing and inconsistent with other of his contentions, particularly since the WCJ found as a fact that he had suffered a lumbar strain/sprain, in addition to the disc herniation and nerve impingement. Beyond Claimant's observation that the latter conditions were localized in the area of the body addressed by the NCP, he does explain why the disc herniation and nerve impingement should not be regarded as injuries beyond the lumbar strain/sprain identified in the NCP. *See City of Philadephia v. WCAB (Smith),* 946 A.2d 130, 137 & n. 15 (Pa.Cmwlth.2008) (treating disc herniation and nerve impingement as distinct injuries from lumbar strain, for purposes of Section 413(a)). Indeed, later in his brief, Claimant references *Smith* and indicates "[i]n the instant case the NCP was materially incorrect because *it did not list all the injuries* sustained in the work incident." Brief for Claimant at 17 (emphasis added).

413(a) based on the failure to file a review petition only if he presents no evidence that there was a material mistake in the notice of compensation payable as of the time of its issuance. Claimant's essential position along these lines is also supported by the Workers' Compensation Appeal Board, which has filed an *amicus* brief, highlighting that our resolution of the question presented is of significant importance to workers' compensation practice and procedure.

This Court's opinion in *Jeanes Hospital* addressed Commonwealth Court precedent which had required claimants to file a claim petition when seeking to expand the scope of a notice of compensation payable to subsume additional injuries. *See, e.g., Jeanes Hosp. v. WCAB (Hass)*, 819 A.2d 131 (Pa. Cmwlth.2003); *Zippo Mfr'g Co. v. WCAB (Louser)*, 792 A.2d 29, 33 (Pa.Cmwlth.2002); *AT & T v. WCAB (Hernandez)*, 707 A.2d 649, 650 n. 2 (Pa.Cmwlth.1998). The difficulty with these cases was that they departed from the express statutory provisions of Section 413(a), which permit modification to be accomplished via review petition. *See Jeanes Hosp.*, 582 Pa. at 421, 872 A.2d at 169.[3] Accordingly, *Jeanes Hospital* clarified that a review petition, and not a claim petition, was the appropriate mechanism to secure modification of the notice.

*Jeanes Hospital*, however, was not focused on the distinction between corrective amendments and amendments addressing subsequently-arising medical or psychiatric conditions related to the original injury (or consequential conditions). Thus, unfortunately, language in the decision blurs this difference. Corrective amendments and amendments to address consequential conditions require independent consideration, since the Legislature treated them in separate and distinct passages of Section 413(a). Corrective amendments are covered by the first paragraph, codified at Section 771 of Title 77 of the Pennsylvania Statutes,

**3.** The Commonwealth Court had permitted claimants to proceed via review petition in circumstances in which the notice of compensation payable contained a material mistake, or where the claimant alleged the additional injuries arose as a natural consequence of the accepted injury. *See Jeanes Hosp.*, 582 Pa. at 412–13, 872 A.2d at 163 (discussing the salient Commonwealth Court decisions).

77 P.S. § 771, which applies only in circumstances in which there was an inaccuracy in the identification of an existing injury. *See Waugh v. WCAB (Blue Grass Steel)*, 558 Pa. 400, 405, 737 A.2d 733, 736 (1999) (citing *Hartner v. WCAB (Phillips Mine & Mill, Inc.)*, 146 Pa.Cmwlth. 167, 177–78, 604 A.2d 1204, 1209 (1992)). Amendments pertaining to an increase, decrease, recurrence, or cessation of disability are addressed in the second paragraph of Section 413(a), codified at Section 772 of Title 77. *See* 77 P.S. § 772.[4]

Importantly, Section 771 specifies that amendments under its terms may be made "in the course of the proceedings under *any* petition pending before [the] workers' compensation judge." 77 P.S. § 771 (emphasis added). However, this language is absent from Section 772, which authorizes amendments "upon petition filed by either party." 77 P.S. § 772. Thus, it is apparent that the Legislature intended to allow corrective amendments at any time and in any procedural context; whereas, amendments based on consequential conditions are to be made only upon consideration of a specific review petition.[5] Since courts are obliged to apply statutory terms as written in the absence of a material ambiguity, *see* 2 Pa.C.S. § 1921(b), we now disapprove *Jeanes Hospital* to the extent it suggests an absolute requirement of a review petition as a prerequisite to corrective amendments.

We are cognizant of the general requirement to adhere to precedent. There are material differences between the legal issues presented in *Jeanes Hospital* and in the present case, however. In the first instance, in *Jeanes Hospital*, at least some of the injuries sought to be subsumed within the notice of compensation payable, such as fibromyalgia and depression, appear to be consequential conditions as opposed to injuries

---

**4.** Consequential conditions are regarded as increasing disability for purposes of Section 413(a). *See Jeanes Hosp.*, 582 Pa. at 419, 872 A.2d at 167.

**5.** The Legislature may have made corrective amendments more readily available to lessen the potential that claimants might suffer benefits reductions based upon inaccuracies occasioned by employers, intentionally or unintentionally, in the framing of a notice of compensation payable.

existing at the time of the notice's issuance.[6]   Moreover, the *Jeanes Hospital* claimant had, in fact, filed a petition to review the notice of compensation payable. *See Jeanes Hospital,* 582 Pa. at 407–08, 872 A.2d at 160. Accordingly, it was immaterial to the outcome whether or not prevailing law established a bright-line requirement for claimants to do so in the first instance. For this reason, to the extent *Jeanes Hospital* suggested, contrary to Section 413(a), that a review petition must filed by the claimant as a necessary prerequisite to corrective amendments, such proposition was non-binding *dictum. See generally Commonwealth v. Singley,* 582 Pa. 5, 15, 868 A.2d 403, 409 (2005) (expressing the axiom that "a statement in [a] prior opinion, which clearly was not decisional but merely dicta, 'is not binding upon us'" (citation omitted)). Even if this were not so, because *Jeanes Hospital* did not in any way address the textual differences between the first and second paragraphs of Section 413(a), its reasoning is not sufficient to support its extension to the corrective amendment context. *See Mayhugh v. Coon,* 460 Pa. 128, 135, 331 A.2d 452, 456 (1975) (discussing exceptions to *stare decisis* ).

We also recognize the importance of the policy considerations raised by Employer, as well as the difficulties confronting employers defending against belated efforts by claimants to avoid compensation adjustments. Again, however, we are not free to override the procedural scheme expressly prescribed by the Legislature. This Court has exclusive supervisory power over procedural matters in the courts, *see* PA. CONST. art. V, § 10, but not in the administrative arena.

6. This Court's decisions in *Korach* and *Commercial Credit* also concerned attempts to obtain modification based on consequential and subsequently-arising psychiatric conditions. *See Korach,* 584 Pa. at 415, 883 A.2d at 582; *Commercial Credit,* 556 Pa. at 331, 728 A.2d at 904 (explaining "there was no evidence that claimant was disabled from a psychiatric standpoint at the time that this [n]otice was executed."). Thus, the decisions are also cases where the latitude for modification "in the course of the proceedings under any petition pending before [the] workers' compensation judge," 77 P.S. § 771, was not available under Section 413(a). In other words, *Korach* and *Commercial Credit* were evidently Section 772, and not Section 771, cases, under Title 77, albeit this Court did not couch the matters on such terms.

It should also be noted that the language of Section 413(a) is discretionary—a workers' compensation judge "may" at any time correct a notice of compensation payable. 77 P.S. § 771. The Legislature therefore contemplated that there are circumstances in which it would be inappropriate for a workers' compensation judge to direct a corrective amendment of a notice of compensation payable, including in a termination proceeding.[7] Moreover, the procedures applied by a workers' compensation judge must obviously comport with due process norms, *see Pennsylvania Bankers Ass'n v. Pennsylvania Dep't of Banking*, 598 Pa. 313, 327, 956 A.2d 956, 965 (2008); and therefore, reasonable prior notice and a fair opportunity to respond must be provided to the employer prior to the implementation of a corrective amendment. *See id.*[8] Additionally, the burden rests with claimants to establish the existence of additional compensable injuries giving rise to corrective amendments, regardless of the procedural context in which the amendments are asserted. *See Waugh*, 558 Pa. at 405, 737 A.2d at 736. The discretionary overlay, the due process requirement, and the allocation of the burden to the claimant to establish the injury, distinguishes the corrective-amendment scenario from the circumstances in *Commercial Credit*, where this Court rejected a requirement for an employer to "prove a negative" based upon a mere allegation of a

7. For this reason, claimants would be well advised that they should give fair notice of the grounds for contemplated corrective amendments at the earliest opportunity. On the other hand, in applying their discretion, workers' compensation judges must remain cognizant of the remedial purposes of the Workers' Compensation Act. *See Hannaberry HVAC v. WCAB (Snyder)*, 575 Pa. 66, 73, 834 A.2d 524, 528 (2003).

8. Notably, Employer has not raised a constitutional question in this case. Employer also does not discuss the specific time frame in which it obtained notice that Claimant intended to rely on an aggravation of a structural impairment. Certainly, Employer's experts addressed the matter extensively in their testimony presented to the WCJ, opining that the structural impairments were preexisting and unrelated to the work incident. *See* Deposition of Robert Smith, M.D., N.T., January 24, 2005, at 21–35; Deposition of Kevin G. Madden, M.D., N.T., March 10, 2005, at 13–18. Employer also has not indicated what other evidence it would have wished to have presented if additional notice had been provided.

psychiatric injury asserted belatedly. *See Commercial Credit,* 556 Pa. at 332–33, 728 A.2d at 905.[9]

For the above reasons, we hold that Claimant was not required to file a review petition to support a corrective amendment to the NCP.[10]

## II.

■ In a separate challenge, Employer contends the WCJ's finding of work-relatedness, which was also affirmed by the Commonwealth Court, lacks support in substantial evidence. Employer asserts that all of the objective, diagnostic testing confirmed that Claimant's disc herniation and any related nerve impingement predated the work incident giving rise to compensation. In particular, Employer points to a post-

9. In its *amicus* brief, the Workers' Compensation Appeal Board describes a third method of effectively amending a notice of compensation payable under *Gumro v. WCAB (Emerald Mines Corp.),* 533 Pa. 461, 626 A.2d 94 (1993) (holding that an employer had failed to meet its burden in seeking termination, where it had failed to adduce expert testimony disproving a relationship between the claimant's venous insufficiency in his leg and an accepted knee injury). According to the Board, *Gumro* is interpreted as "placing the burden on the employer where a claimant's continuing or worsening symptoms involve the same body part as the accepted work injury." Brief for *Amicus,* at 7 (citing *Marks v. WCAB (Dana Corp.),* 898 A.2d 689, 693 (Pa.Cmwlth.2006)). Further, the Board questions the Commonwealth Court's view that a lumbar strain/ sprain and a herniated disc/radiculopathy are separate injuries for purposes of *Gumro. See, e.g., Westmoreland County v. WCAB (Fuller),* 942 A.2d 213, 217 n. 7 (Pa.Cmwlth.2008).

The Commonwealth Court's approach of interpreting *Gumro's* holding somewhat narrowly seems reasonable, particularly in light of the liberal procedures available under the statute for claimants to obtain modifications to descriptions of accepted injuries, as well as the legitimate allocation to claimants of the burden to prove injuries which are not accepted by employers. In the absence of any relevant argumentation by the parties to this appeal, although we will not dispositively resolve the matter, we decline to disturb the Commonwealth Court's approach here.

10. The Workers' Compensation Appeal Board also presents a distinct concern that dictum contained in *Jeanes Hospital* may be interpreted as subjecting review petitions to time limitations contained within the Workers' Compensation Act which do not, by their terms, apply to modifications. *See* Brief for *Amicus* at 10–13. These matters must await another day, since they are beyond the identified scope of the present discretionary appeal.

incident magnetic resonance imaging study indicating that, overall, there was little change from pre-incident studies. Employer also offered into evidence the results of a post-incident electromyelographic and nerve condition study, which indicated a preexisting nerve condition, but no recent one. Furthermore, Employer observes that Claimant's expert witness never addressed his recovery from the only accepted work injury, lumbar strain/sprain. Accordingly, Employer contends that the expert's opinion was incompetent as a matter of law under *Newcomer v. WCAB (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997).

Under the appellate standard of review pertaining to administrative agency adjudications, agency findings are subject to judicial review to assure that they are supported by substantial evidence. *See* 2 Pa.C.S. § 704. Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion. *See Sell v. WCAB (LNP Engr'g)*, 565 Pa. 114, 122, 771 A.2d 1246, 1250 (2001). An appellate court conducts substantial-evidence review considering the record in the light most favorable to the prevailing party. *See id.* at 122–23, 771 A.2d at 1250–51.

At the termination hearing, Claimant presented deposition testimony from board-certified orthopedic surgeon Alan P. Gillick, M.D., who was a treating physician. Dr. Gillick explained that he conducted his first examination in 2000, when Claimant complained of numbness in his left foot but presented no pain or disability. *See* Deposition of Alan P. Gillick, M.D., N.T., April 15, 2005, at 9–10. Dr. Gillick did not initially recommend any treatment, but, in mid–2001, authorized a series of epidural injections. He explained that the symptoms, at that time, "were certainly not severe enough to warrant anything surgical." *Id.* at 11–12. In 2002, Dr. Gillick reviewed a magnetic resonance imaging study reporting a "small, broad posterior disc herniation at L5–S1 mildly indenting the ventral thecal sac but not resulting in significant narrowing of the spinal canal." *Id.* at 17. In light of the minimal symptoms, in Dr. Gillick's judgment, surgery still was not implicated. *See id.*

After the work incident, however, Claimant complained of back pain radiating down the left leg. According to Dr. Gillick, a myelogram confirmed that, at that point, "disc material is not only just protruding, but it is compressing and causing pressure on the S1 nerve root on the left side; and hence, the pain down the leg that follows the S1 distribution." Gillick Dep. at 17–18. Dr. Gillick described the myelogram as the most definitive test to determine whether disc herniation is causing compression on a nerve. *See id.* at 18. He discussed the magnetic resonance imaging studies referred to by Employer, indicating that they were "not convincing enough or clear enough" to support a surgical decision. *Id.* at 20, 41. Dr. Gillick opined that, as a result of the 2004 work incident, Claimant suffered a "new injury," in that "there was a significant change in his imaging study." *Id.* at 21. Further, he related that:

> all of the information that I can ascertain would suggest that this was a new injury, or at least, let's say, it was a worsening of an underlying degenerative problem in the sense that he developed pain down his leg which he did not have before. He developed a change on his MRI, as well as his myelogram, confirming that the disc had truly herniated and was compressing his nerve.

*Id.* at 23. The opinions were couched in terms of a reasonable degree of medical certainty. *See, e.g., id.* at 21.

Dr. Gillick also discussed the electromyelographic studies highlighted by Employer, indicating that he rarely relies on them, because of their subjective nature. *See* Gillick Dep. at 26–27 ("An EMG is a very subjective study; and when I do use an EMG, I tend to use it to help distinguish between different diagnoses."). Based upon his examination and review, Dr. Gillick recommended a surgical discectomy, which Claimant subsequently underwent. *Id.* at 22–23.

This appeal presents a common fact pattern in which an employer asserts that a work-related back injury is a short-term soft tissue injury; whereas, the claimant with a history of congenital or degenerative abnormalities, claims a longer-term structural aggravation. In this arena, employers are

confronted with some inherent difficulties. First, although there may be some perceived unfairness, the Legislature has made a policy choice to impose liability on employers in the aggravation scenario. *See RAG (Cyprus) Emerald Resources, L.P. v. W.C.A.B. (Hopton)*, 590 Pa. 413, 429–430, 912 A.2d 1278, 1288–89 (2007). Second, the task of assessing the contribution of a work injury to structural impairments in these scenarios can be difficult and, as here, may involve medical impressions which entail a degree of subjectivity. Hence, it is not surprising that the expert witnesses presented by claimants and employers express conflicting perspectives concerning causation. The competing opinions generally present credibility matters to be dispositively resolved by workers' compensation judges. *See Marks v. W.C.A.B. (Dana Corp.)*, 898 A.2d 689, 694 (Pa.Cmwlth.2006) ("There is absolutely no doubt in workers' compensation jurisprudence that the WCJ has the sole power to evaluate the evidence and to determine witness credibility and that the WCJ may accept or reject the testimony of any witness in whole or in part, including a medical witness." (citations omitted)).

In this case, the Commonwealth Court correctly held that substantial evidence, in the form of Dr. Gillick's testimony as discussed above, supported a finding of work-related aggravation. Employer's rejoinder focuses largely on its own evidence, which we recognize also is substantial.[11] However, the main focus of substantial evidence review is on the evidence presented by the prevailing party. *Cf. Sell*, 565 Pa. at 122–23, 771 A.2d at 1250–51. Generally, arguments centered on the weight of countervailing evidence are framed as claims of capricious disregard of evidence by the fact finder. *See generally Leon E. Wintermyer, Inc. v. WCAB (Marlowe)*, 571 Pa. 189, 203–04, 812 A.2d 478, 487–88 (2002). In this vein, we

---

11. Employer's most forceful argument centers on the post-incident magnetic resonance imaging study, which reported little change from a pre-incident study. As Claimant highlights, however, the pre-incident study had characterized the existing disc herniation as small, whereas the post-incident study reported it as being of a medium size. *See* Smith Dep. at 43. Thus, although, again, Employer's evidence was strong, even the objective studies it selects to highlight are not unequivocally favorable to its position.

have stressed that such evaluation is not applied in such a manner as would intrude upon the administrative agency's fact-finding role. *See id.; see also Borough of Tyrone v. UCBR*, 52 Pa.Cmwlth. 18, 21, 415 A.2d 146, 148 (1980) (explaining that "[t]o accord greater credibility to one witness' testimony than to that presented by others is simply a manifestation of the Board's fact-finding role and does not constitute a capricious disregard of evidence").

As noted, relying on *Newcomer*, Employer also advances the proposition that a medical expert's testimony is incompetent in workers' compensation proceedings where it does not specifically address the injury on the terms on which it was couched in a notice of compensation payable. However, this simply is not supported by *Newcomer*, the sole authority Employer invokes. *Newcomer's* holding is that an expert's opinion concerning work-relatedness is incompetent as a matter of law where it is based solely on a false medical history supplied by the claimant. *See Newcomer*, 547 Pa. at 647–48, 692 A.2d at 1066. The opinion does not suggest a bright-line rule precluding claimants from pursuing corrective amendments to notices of compensation payable by establishing a contemporaneous mistake.

In the present case, the material conflict in this case was among medical opinions concerning work-relatedness, none of which was shown to have been grounded solely in a fabricated account of events. Thus, it is apparent that *Newcomer* does not control the outcome. Moreover, and coming full circle, the WCJ possessed authority, under the express terms of Section 413(a), to entertain corrective amendments in the context of "any petition," even one filed by the employer seeking termination. 77 P.S. § 771.

The order of the Commonwealth Court is affirmed.

Chief Justice CASTILLE, Justice BAER, Justice TODD, Justice McCAFFERY and Justice GREENSPAN join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I concur with the majority because I believe a workers' compensation judge may correct materially incorrect information in a notice of compensation payable pursuant to 77 P.S. § 771. *See Jeanes Hospital v. WCAB (Hass)*, 582 Pa. 405, 872 A.2d 159, 169 (2005) (Eakin, J., dissenting) (although WCJ may amend materially incorrect information, claimant must file new claim petition to receive benefits for injuries not arising as natural consequence of original injury accepted in NCP). However, this Court has stated "[w]hen an NCP description of injury does not correctly reflect the actual injury or enumerate all of the injuries sustained in a work-related incident . . . a claimant must file a Petition to Review Notice of Compensation Payable, which is treated like a claim petition." *Id.*, at 169 (majority opinion).

This is the law of this Commonwealth; I do not believe it is prudent or necessary to allow a WCJ to amend an NCP in all circumstances.

Here, medical evidence showed Claimant's disc herniation worsened after his work-related injury. Amending the NCP to include the aggravation of Claimant's disc herniation—a diagnosis more accurately and fully reflecting Claimant's original injury—remedied the materially incorrect NCP. Because the original NCP was materially incorrect in omitting the disc herniation, the WCJ properly amended the NCP to correct the omission of the aggravation of Claimant's disc herniation. *See, e.g.*, 77 P.S. § 771 (permitting WCJ to amend materially incorrect NCPs); *Jeanes Hospital*, at 169 (Eakin, J., dissenting) (WCJ may amend materially incorrect NCP).

Furthermore, I agree with the majority that due process is not implicated here, because Employer was able to present ample medical evidence. *See* Majority Op., at 533 n. 8, 975 A.2d at 582. Additionally, Employer failed to raise a due process claim, and "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). However, the importance of due process in workers' compensation cases cannot be understated, as work-

ers' compensation cases require extensive preparation and the insight of expert testimony. A party can only be adequately prepared to defend a request to amend an NCP if it has ample notice; requests to amend an NCP should be denied unless adequate notice was given to the opposing party. *Jeanes Hospital,* at 170 (Eakin, J., dissenting) (notice is required for reasons of fundamental fairness).