**Diana DILLINGER, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (PORT AUTHORITY OF ALLEGHENY COUNTY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 12, 2011.

Decided March 1, 2012.

Reconsideration Denied April 26, 2012.

Barbara E. Holmes, Pittsburgh, for petitioner.

Gary M. Scoulos, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Diana Dillinger (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (WCAB), dated March 31, 2011, which reversed the decision of a Workers' Compensation Judge (WCJ) to grant Claimant's petition to amend the description of her work injury to include post-traumatic stress disorder (PTSD) and dismiss as moot her claim petition for aggravation of her PTSD. We affirm in part and reverse and remand in part.

The WCJ found the following pertinent facts. On November 15, 2003, Claimant, a bus driver, sustained an injury in the course and scope of her employment with the Port Authority of Allegheny County (Employer). (Findings of Fact, Nos. 1, 6(a).) On December 5, 2003, Employer issued a notice of temporary compensation payable (NTCP), which described Claimant's injury as a left shoulder strain occurring when a passenger assaulted Claimant from behind. (Findings of Fact, No. 1.)[1] The NTCP set forth that Claimant became disabled on November 16, 2003, and was released to partial-duty work as of November 19, 2003, with loss of wages. (Findings of Fact, No. 1.) Claimant signed a supplemental agreement on December 8, 2003, and another supplemental agreement on January 2, 2004, both of which modified her benefits. On February 24, 2004, Claimant signed a final receipt as well as a third supplemental agreement, which suspended her benefits as of February 20, 2004. (Findings of Fact, No. 3.)[2]

1. Claimant's attacker grabbed her by the hair, slammed her left shoulder into the bus door and window, and slammed her head against the steering wheel. He also grabbed her left arm and hand, twisting her arm behind her, then in front of her and behind her again. (Findings of Fact, No. 6(b).)

2. At the hearings in this matter, the WCJ decided that Claimant's benefits were properly suspended (rather than terminated) based upon her return to work with no earnings loss as of February 2004. (Findings of Fact, No. 22(a); see also Conclusions of Law, No. 2.) Although, at intervals, the WCJ stated that Claimant returned to work on February 22, 2004, the relevant supplemental agreement

Claimant subsequently alleged a recurrence of her work injury on December 3, 2005, but, on March 17, 2006, Employer issued a notice of workers' compensation denial (NCD) denying a recurrence. (*See* Findings of Fact, No. 4.) On March 22, 2007, Claimant filed a petition to review compensation benefits, alleging that she suffered PTSD due to her original work injury, but that Employer, while paying to treat this condition, failed to accept it formally as work-related. On that same date, Claimant also filed a petition to reinstate her compensation benefits, alleging, *inter alia*, that her left shoulder injury had recurred. On November 13, 2007, Claimant filed a claim petition, alleging an aggravation of her PTSD due to her continued interaction with the public in her role as a bus driver. (Findings of Fact, No. 5.)

The WCJ held hearings on the petitions, and Claimant testified regarding the November 15, 2003, assault and her resulting treatment. (*See generally* Findings of Fact, No. 6.) Claimant explained that she was originally seen in the emergency room and then by panel physicians. Upon referral through Employer's Employee Assistance Program (EAP), Claimant treated with Carol Hughes, a clinical social worker, for her emotional complaints through March 2004. (Findings of Fact, No. 6(c).) Since that time, Claimant has seen Dr. Charolette Hoffman and a therapist, Lisa Schwarz, both of whom believed that, because of continuing issues with belligerent

or abusive passengers, Claimant should be reassigned, but Employer did not accommodate Claimant. (Findings of Fact, No. 6(f).)

Claimant testified that continued bus driving affects her PTSD. In particular, she explained that aggressive passengers are triggers; bus runs are based on seniority, and, therefore, she cannot always control the route she drives; and her attacker has been released from prison. (Findings of Fact, Nos. 6(h-i)). While Claimant believes that her attacker is under court order not to ride her bus, he has changed his appearance and dress, and she is "scared to death that he'll get on [her] bus and [she] won't know it until he's already on there." (Findings of Fact, No. 6(i).) Claimant further testified that she had mental health counseling before the date of the work incident, but was not treating for her mental health at the time of the incident. Moreover, she did not need additional or different counseling regarding harassment claims that she was facing at work because they did not make her more depressed or change the focus of her depression. (Findings of Fact, No. 8(d).) [3]

Claimant did not allege a disability from her PTSD in excess of fifty-two weeks, and Employer did not object to the documentary evidence relating to the care and treatment of that condition. (Findings of Fact, No. 11.) [4] This evidence included

---

and the final receipt indicate that Claimant returned to work on February 20, 2004. (C.R., Agreement to Stop Weekly Workers' Compensation Payments (Final Receipt), 2/24/2004, at 1, R.R. at 13a; C.R., Supplemental Agreement for Compensation for Disability or Permanent Injury, 2/24/2004, at 1; R.R. at 15a.)

3. Claimant testified that she was sexually harassed by a fellow bus driver who then accused her of sexually harassing him, (N.T.,

8/22/07, at 14–16), but that her supervisor ultimately believed her. (*Id.* at 16.)

4. Section 422 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 835, provides that, where a claim for compensation involves fifty-two weeks or less of disability, the claim may be decided on medical reports, unless the party against which the report is offered objects to its admission.

Hughes's records verifying that the November 2003 work incident caused Claimant's PTSD. (Findings of Fact, No. 11(a).) It also included correspondence dated June 29, 2005, from Dr. Hoffman advising that Claimant was being treated for severe PTSD due to passenger attacks, most recently on November 15, 2003. Dr. Hoffman recommended that Claimant be reassigned, asserting that it is "extremely difficult if not impossible for Diana to fully recover from her PTSD symptoms if she continues to be put in a position of possibly being attacked by continuing to drive a bus route." (Findings of Fact, No. 11(b).)[5] Due to her PTSD, in May 2008, Claimant again asked to be transferred from her bus driver job, and Dr. Hoffman filled out a form requesting the accommodation. Dr. Hoffman explained that Claimant's attacker's release and threats cause her symptoms to "continue and are frequently exacerbated particularly when she sees him while driving." (Findings of Fact, No. 11(c).) Employer submitted no evidence in defense of Claimant's PTSD claim. (Findings of Fact, No. 13.)

The WCJ specifically found:

16. I find the claimant has also established that she suffered PTSD as a result of her November 2003 injury. The testimony and the medical evidence submitted by claimant fully supports a determination that the employer was aware of this condition, referred her for treatment for it, and then failed and refused to acknowledge it, even as claimant continued to suffer from it. The records verify that this condition is exacerbated by claimant's on-going bus driving, particularly now that her assailant has been released from prison and has made additional threats against her.

(Findings of Fact, No. 16.) The WCJ credited Claimant's testimony, noting that she "has been straightforward and honest in all respects." (Findings of Fact, No. 17.) The WCJ further found that Claimant's PTSD "is a condition that should have been listed on the notice of compensation payable [NCP] from the outset as it existed at the time the [NTCP] was issued." (Findings of Fact, No. 23.)

The WCJ then specifically concluded:

1. Claimant has established that she sustained an injury in the form of PTSD in the course and scope of her employment, as a result of the attack which she suffered on November 15, 2003. As the original [NCP] accepting this injury failed to include this diagnosis, and it should have been included, the petition to review is granted pursuant to Section 413(a) of the [Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended* ],[6] 77 P.S. Section 771.

---

**5.** This letter formed the basis for Claimant's claim of an aggravation of her PTSD. (C.R., Claim Petition for Workers' Compensation, at 1–3; R.R. at 29a–31a.)

**6.** Section 413 of the Act, 77 P.S. § 771, provides:

A [WCJ] may, at any time, review and modify or set aside a [NCP] and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] or agreement was in any material respect incorrect.

Section 413 of the Act, 77 P.S. § 772, provides in pertinent part:

A [WCJ] designated by the department may, at any time, modify, reinstate, suspend, or terminate a [NCP], an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the dis-

This condition is related to her work injury and should have been accepted at the outset.

(Conclusions of Law, No. 1.)

Thus, the WCJ granted Claimant's review petition seeking to include her PTSD as part of her original injury. Further, the WCJ dismissed Claimant's claim petition as moot because she amended Claimant's NCP to include PTSD as of Claimant's original injury date. Employer appealed to the WCAB, and Claimant cross-appealed from the WCJ's decision.[7] After considering the matter, the WCAB reversed the WCJ's decision granting the review petition, concluding that it was untimely under *Fitzgibbons v. Workers' Compensation Appeal Board (City of Philadelphia)*, 999 A.2d 659 (Pa.Cmwlth.2010), *appeal denied*, 610 Pa. 612, 20 A.3d 1213 (2011). In a footnote, the WCAB also denied Claimant's protective cross-appeal, concluding that Claimant's "PTSD was not a consequential injury, but existed from the date of the original injury and was not perfected as an acknowledged injury within three years of the last payment of compensation." (WCAB's Op., 3/31/2011, at 8 n. 5.) Claimant's petition for review to this Court followed.[8]

■ On appeal, Claimant first argues that the WCAB erred in reversing the WCJ's decision amending the NTCP to include Claimant's PTSD as an original work injury. In particular, Claimant asserts that the WCAB erred in relying on our decision in *Fitzgibbons* for its conclusion that Claimant's review petition was untimely when, instead, *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 601 Pa. 524, 975 A.2d 577 (2009), or *Pizza Hut, Inc. v. Workers' Compensation Appeal Board (Mahalick)*, 11 A.3d 1067 (Pa.Cmwlth.2011), is the controlling case law. Claimant's argument lacks merit.

In *Cinram*, our Supreme Court determined that, where a termination petition is pending, a review petition is not required before a WCJ can correct material mistakes in the descriptions of a claimant's injuries existing when the NCP was originally issued. Later, in *Fitzgibbons*, this court explained that, while WCJs can amend NCPs during proceedings involving any pending petition, this fact does not preclude the conclusion that the limitation provision of paragraph one of section 413 applies to that entire section of the Act. We specifically stated in *Fitzgibbons*, 999 A.2d at 663–64 (emphasis added):

> [W]hen a party is seeking either to obtain relief through the correction of an NCP under paragraph one of Section 413 of the Act, or is seeking to add

---

ability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided ... That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

7. Employer challenged the WCJ's decision granting the review petition, and Claimant argued that, if the WCAB were to reverse the WCJ's decision granting the review petition, the WCAB should then grant Claimant's claim petition.

8. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

additional consequential injuries to a claimant's compensable, work-related injuries under paragraph two of Section 413 of the Act, **the party must file the petition within three years of the date of the most recent payment of compensation.**

Here, Claimant filed her review petition seeking to expand the description of her original injury on March 22, 2007. Because the parties executed a supplemental agreement suspending Claimant's benefits in February 2004, Claimant filed the review petition beyond the three-year limitation period for correcting the NCP. Therefore, under *Fitzgibbons*, Claimant may not now seek to add her PTSD to her NTCP as an original work injury.[9]

Claimant nonetheless contends that, pursuant to *Pizza Hut*, the WCJ in this case could still properly review her NTCP because she had a reinstatement petition pending as of March 22, 2007. However, contrary to Claimant's assertion, our decision in *Pizza Hut* avails her nothing. There, a claimant sought to correct an NCP by adding injuries that existed at the time the NCP was issued. We held that, because it was unnecessary for the claimant to file a separate review petition and because the employer had filed its termination petition within three years from its last payment of benefits, the WCJ properly expanded the description of the claimant's work injury. *Pizza Hut*, 11 A.3d at

1070–71. Here again, Claimant did not file her reinstatement petition within three years from the date of the last benefit payment.

Moreover, while Claimant filed a reinstatement petition within 500 weeks from the suspension of her benefits, alleging that she was once again disabled due to her left shoulder injury, we do not agree with her contention that she may rely on this petition to correct the NTCP. Section 413 of the Act clearly provides that, "where compensation has been suspended ... *payments under the agreement or award* may be resumed at any time during the period for which compensation for partial disability is payable...." 77 P.S. § 772 (emphasis added). Here, the supplemental agreement suspending Claimant's benefits recognized her work-related injury as a left shoulder strain only. Therefore, payments for her alleged PTSD are not encompassed by section 413's provision permitting resumption of benefits within the outlined 500–week period.[10] *Cf. Fitzgibbons*, 999 A.2d at 664 (providing that we did not need to consider the claimant's argument that she was entitled to reinstatement of her benefits under the last sentence of section 413 for additional injuries not accepted in the NCP where we had previously explained that her petition seeking to amend the NCP was outside the three-year statutory limitation period).[11]

---

9. Further, even Claimant acknowledges that, in the event *Fitzgibbons* controls, its holding "does seem to require" the WCAB's determination that Claimant's review petition is out of time. (Claimant's Brief at 17.)

10. We explained in *Wertz v. Workmen's Compensation Appeal Board (Department of Corrections)*, 683 A.2d 1287, 1291–92 (Pa.Cmwlth. 1996) (emphasis added), that:
   [t]he law requires a claimant to prove two things in order to show that the reasons for a suspension no longer exist.... First, he must prove that his earning power is once

again adversely affected by his disability through no fault of his own.... Second, he must prove by a preponderance of the evidence that he is suffering from *the same disability for which he initially received workers' compensation benefits.*

11. We noted in *Fitzgibbons* that the claimant was not seeking reinstatement for an alleged disability related to her original injury. 999 A.2d at 664 n. 7. In contrast, Claimant in this matter did file a petition for reinstatement of her benefits related to her original injury. However, because Claimant did not pursue

■ Next, Claimant argues that, if we deem her review petition untimely, we should hold that Employer's conduct in referring her for treatment with Carol Hughes and in paying for Hughes' treatment of her PTSD through March 31, 2004, lulled Claimant into falsely believing that Employer considered her PTSD to be work-related. Claimant asserts that, therefore, we should extend the three-year limitation period for expanding the NTCP at least through March 31, 2004, or we should remand the matter to the WCAB for remand to the WCJ for consideration of the issue. This argument also lacks merit.

■ Claimant is asserting equitable estoppel principles. The Supreme Court explained in *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 422, 883 A.2d 579, 586 (2005) (citation omitted), that

> [e]quitable estoppel arises in the workers' compensation arena when an employer, "by [its] acts, representations, or admissions, or by [its] silence when [it] ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

However, "the doctrine of equitable estoppel cannot toll the statute of limitations unless the Claimant can establish fraud, concealment or misrepresentation on the part of the employer." *Budd Baer, Inc. v. Workers' Compensation Appeal Board (Butcher)*, 892 A.2d 64, 67 (Pa.Cmwlth. 2006). Here, Claimant does not allege such duplicitous conduct on Employer's part.

■ Last, Claimant argues that the WCAB erred in denying her cross-appeal based on the WCJ's determination that Claimant's PTSD existed from the date of her original injury. We agree.

■ The law is clear that a claimant with a pre-existing injury, whether mental or physical, is entitled to benefits as long as she shows that her injury has been aggravated by a working condition to the point of disability. *Rag (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton)*, 590 Pa. 413, 430, 912 A.2d 1278, 1288–89 (2007). Whether or not the pre-existing condition is related to the work injury is irrelevant. The employer takes the employee as she comes. *Id.* at 429–30, 912 A.2d at 1288. Thus, the WCAB erred in dismissing Claimant's claim petition.

■ Moreover, the WCJ erred in dismissing Claimant's claim petition as moot. Claimant may be entitled to benefits based on an aggravation of her PTSD. However, in dismissing the claim petition as moot, the WCJ failed to make necessary findings as to whether Claimant's PTSD, a psychic injury, was caused by abnormal working conditions. *See PA Liquor Control Board v. Workers' Compensation Appeal Board (Kochanowicz)*, 29 A.3d 105 (Pa.Cmwlth. 2011) (providing that, when alleging a psychic injury, a claimant must prove that she was exposed to abnormal working conditions and that her psychological problems are not a subjective reaction to normal working conditions). Because the WCJ did not address this issue, we must remand this case to the WCAB for remand to the WCJ for receipt of additional evi-

that issue on appeal, we, like the *Fitzgibbons* Court, are not required to decide any issue regarding the reinstatement of Claimant's

benefits within the 500–week period for which partial disability is payable.

dence from both parties on this issue, and for findings of fact and conclusions of law with respect to that evidence. *See B & T Trucking v. Workers' Compensation Appeal Board (Paull),* 815 A.2d 1167, 1172–73 (Pa.Cmwlth.2003) (providing that a remand for the taking of additional evidence is proper when the fact-finder neglects to consider salient issues before it).

Accordingly, the order of the WCAB is affirmed to the extent that it dismissed Claimant's review petition seeking to include her PTSD as part of her original work-related injury. The order is reversed to the extent that it dismissed Claimant's claim petition. The case is further remanded to the WCAB for remand to the WCJ for the taking of additional evidence on the abnormal working conditions issue and for findings of fact and conclusions of law on Claimant's claim petition.

### ORDER

AND NOW, this 1st day of March, 2012, the order of the Workers' Compensation Appeal Board (WCAB), dated March 31, 2011, is hereby affirmed to the extent that it dismissed Diana Dillinger's (Claimant) review petition. The order is reversed to the extent that it dismissed Claimant's claim petition, and the case is remanded to the WCAB for remand to the workers' compensation judge for the taking of additional evidence on the abnormal working conditions issue and for findings of fact and conclusions of law regarding the claim petition.

Jurisdiction relinquished.