# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine Stacy-McCormick,                :
                    Petitioner          :
                                     :
          v.                       :   No. 1698 C.D. 2019
                                     :   Submitted: July 17, 2020
Workers' Compensation Appeal          :
Board (Ridley School District),          :
                   Respondent          :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: November 10, 2020**

Christine Stacy-McCormick (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated November 5, 2019. The Board affirmed the decision of a Workers' Compensation Judge (WCJ), denying the claim and review petitions filed by Claimant and granting the termination petition filed by Claimant's employer, Ridley School District (Employer). For the reasons set forth below, we affirm the Board's order.

## I. BACKGROUND

Claimant worked for Employer as a school bus driver. On October 17, 2014, Claimant was involved in a work-related motor vehicle accident when a Southeastern Pennsylvania Transportation Authority (SEPTA) fuel tanker vehicle

struck her school bus, causing her to sustain injuries to her left hand and wrist. Employer accepted liability for left hand and wrist contusions and a low back sprain pursuant to a medical-only Notice of Compensation Payable (NCP). Thereafter, on October 11, 2017, Claimant filed: (1) a claim petition, asserting that she had sustained an injury to her neck, back, left arm, left hand, and left wrist while working for Employer on October 17, 2014, and that she was totally disabled as a result thereof from June 19, 2017, through September 5, 2017; and (2) a petition to review compensation benefits/medical treatment and/or billing, asserting that the description of her injury as set forth in the NCP is incorrect. Subsequent thereto, on February 26, 2018, Employer filed a termination petition, asserting that Claimant had fully recovered from her work-related injury as of February 6, 2018.

Claimant testified before the WCJ at a hearing held on November 15, 2017. At that time, Claimant stated that, on October 17, 2014, she was stopped at a traffic light in her school bus—a shorter school bus with a lift that is used to transport handicapped children—when a SEPTA fuel tanker vehicle crossed over the double yellow line into her lane of traffic and struck her school bus. (Reproduced Record (R.R.) at 19a-22a, 37a-38a.) Claimant testified that, immediately following the work-related motor vehicle accident, she began to experience swelling in her left hand and tingling on her left side from her neck down into her left shoulder, left arm, left hand, low back, and left leg. (*Id.* at 22a-25a, 36a.) Claimant indicated that she initially received treatment at the University of Pennsylvania Medical Center's emergency room, where she underwent a physical examination and had her left arm splinted. (*Id.* at 23a, 40a.)

Claimant testified further that she has treated with various doctors for her work-related injury, including, but not limited to, Gregory T. Tadduni, M.D.,

2

William C. Murphy, D.O., Robert Cabry, M.D., and Andrew Freese, M.D. (*Id.* at 24a.) Claimant explained that, at the time that she first treated with Dr. Tadduni, she reported pain in her neck, left shoulder, and left arm, but that Dr. Tadduni had informed her that he was strictly treating the injury to her left hand. (*Id.* at 25a.) Claimant testified further that Dr. Cabry, who she treated with for the injury to her low back, diagnosed her with sciatic nerve damage and prescribed cortisone and epidural injections. (*Id.* at 25a-26a, 40a-41a.) Claimant indicated, however, that she stopped treating with Dr. Cabry in mid-2015 because she did not receive any relief from her symptoms with the injections. (*Id.* at 26a.) Claimant stated further that, after a little over a year with no medical treatment for her symptoms, she eventually began treating with Dr. Murphy in November 2016 because the pain in her left leg was persistent and had started to bother her more. (*Id.* at 27a, 41a-42a.) Dr. Murphy referred Claimant to Dr. Freese, who performed fusion surgery on Claimant's neck on June 26, 2017. (*Id.* at 28a-29a.) Following the surgery, Claimant was out of work but returned in September 2017 for the 2017-2018 school year. (*Id.* at 30a-31a.) Prior to that time, Claimant had worked for Employer in her regular-duty position without modification, except for a brief period immediately following the October 17, 2014 work-related motor vehicle accident. (*Id.* at 37a.)

Claimant testified further that, as of the date of the November 15, 2017 hearing, she continued to treat with Dr. Freese and Dr. Murphy, undergo post-operative physical therapy two times per week, and receive cortisone injections in her low back. (*Id.* at 32a-33a.) While she believed that the neck surgery had helped, she stated that her recovery could take from one to one and a half years. (*Id.* at 34a.) Claimant also explained that she continues to experience tightness in

3

her neck and left shoulder, numbness and tingling in her left arm, and pain in her neck, left shoulder, left arm, left wrist, low back, and left leg. (*Id.* at 33a-34a, 36a-37a.) Claimant did not believe that she had fully recovered from any of the injuries that she sustained in the October 17, 2014 work-related motor vehicle accident. (*Id.* at 36a.)

In support of her claim and review petitions and in opposition to Employer's termination petition, Claimant presented the deposition testimony of Dr. Murphy, who is board certified in physical medicine and rehabilitation. (*Id.* at 60a.) Dr. Murphy first treated Claimant on November 7, 2016, for complaints of neck pain that radiated into her left shoulder, numbness, tingling, and weakness in her left upper extremity, and low back pain that radiated into her left leg. (*Id.* at 66a-68a.) At that time, Claimant reported to Dr. Murphy that, on October 17, 2014, she was involved in a work-related motor vehicle accident, when another vehicle crossed into her lane of travel and struck the driver's side of her vehicle, causing her to injure the entire left side of her body, including her neck. (*Id.* at 66a-67a, 91a.) Claimant did not report that she had struck her head at the time of the motor vehicle accident, just that she was jarred from side to side. (*Id.* at 91a-92a.) Dr. Murphy performed a physical/neurologic examination of Claimant's cervical and lumbar spine, which revealed, *inter alia*, painful range of motion in the cervical spine, cervical radiculopathy on the left side, restricted, painful motion in the lumbar spine, and lumbar radiculopathy on the left side. (*Id.* at 79a-81a.) Based on Claimant's history and the abnormalities that he discovered on physical examination, Dr. Murphy's initial assessment was that Claimant had sustained "a cervical strain/sprain with the possibility of a cervical disc injury and radiculopathy and . . . a lumbosacral strain[/]sprain with a lumbar disc injury and radiculopathy." (*Id.* at 81a-82a.)

4

In order to confirm his initial assessment, Dr. Murphy ordered magnetic resonance imaging (MRI) of Claimant's cervical and lumbar spines, which revealed disc abnormalities at C5-6 and C6-7, and performed an electromyography (EMG), which revealed left-sided radiculopathy at L5 and S1 and left-sided nerve root irritation at C5 and C6. (*Id.* at 82a, 85a-86a.) Based on these findings, Dr. Murphy referred Claimant for an interventional pain management evaluation and a neurosurgical consultation with Dr. Freese. (*Id.* at 83a.) Thereafter, Claimant underwent an additional round of injections to her lumbar spine, and, on June 26, 2017, a two-level cervical spine discectomy and fusion at C5-6 and C6-7. (*Id.* at 84a, 86a.) Dr. Murphy explained that Dr. Freese, in his surgical report, noted findings of left-sided nerve root compression at C5-6 and C6-7, which correlated with Dr. Murphy's findings on physical examination, the results of the EMG, and the results of the MRI of Claimant's cervical spine. (*Id.* at 85a-86a.) Dr. Murphy also stated that he last treated Claimant on November 28, 2017, and that Claimant continues to receive post-operative physical therapy for her cervical spine and management of her lumbar spine symptoms, including injections on an as-needed basis. (*Id.* at 86a-87a.)

Dr. Murphy testified further that Claimant's prior medical records documented complaints consistent with the left upper extremity complaints that Claimant expressed to Dr. Murphy at the initial visit on November 7, 2016. (*Id.* at 68a-69a, 79a.) Dr. Murphy explained that, in his treatment record from October 28, 2014, Dr. Tadduni documented complaints of low back pain and neck pain that radiated into both of Claimant's shoulders and noted a diagnosis of neck

5

pain. (*Id.* at 69a-72a, 113a-16a.)[1] Similarly, in his treatment record from October 30, 2014, Dr. Tadduni noted complaints of neck pain that radiated into Claimant's left shoulder and down into Claimant's left upper extremity to her left wrist, with bruising, numbness, and tingling, and recommended physical therapy for the left hand and potentially the left upper extremity. (*Id.* at 69a, 72a-74a, 117a-20a.) When questioned whether he could offer an explanation as to why Claimant would not have received any treatment for her neck or left upper extremity prior to coming under his care, Dr. Murphy stated that he was "somewhat baffled" because Claimant's complaints had been documented in her medical records. (*Id.* at 74a-75a.) Dr. Murphy admitted, however, that in his treatment record from October 23, 2014, Dr. Tadduni made no reference to any complaints of cervical spine pain. (*Id.* at 105a, 104a, 214a-16a.)[2] Dr. Murphy also testified that, in addition to complaints relative to Claimant's neck and left upper extremity, Dr. Tadduni also documented complaints relative to Claimant's low back. (*Id.* at 75a-78a.) Specifically, in his November 3, 2014 treatment record, Dr. Tadduni documented the results from an October 30, 2014 MRI of Claimant's lumbar spine and noted both a possible diagnosis of left lumbar radiculopathy and a referral for interventional pain management. (*Id.* at 77a-78a, 121a-24a.)

Ultimately, Dr. Murphy opined within a reasonable degree of medical certainty that, as a result of the October 17, 2014 work-related motor vehicle accident, Claimant sustained a left wrist and hand contusion, a cervical strain/sprain,

---

[1] The Reproduced Record in this matter was improperly numbered with the repetition of numbers 104a to 113a. Our citation to page 113a above is a reference to the second page in the Reproduced Record bearing the number 113a.

[2] The Reproduced Record in this matter was improperly numbered with the repetition of numbers 104a to 113a. Our citation to page 104a above is a reference to the second page in the Reproduced Record bearing the number 104a.

cervical disc herniation at C5-6 and C6-7, left-sided nerve root irritation at C5 and C6, a lumbar sprain/strain, and a lumbar disc injury at multiple levels from L3-4 through L5-S1, including a herniation at L5-S1 and left-sided radiculopathy at L5 and S1. (*Id.* at 87a-88a.) Dr. Murphy further opined that Claimant would have been incapable of performing her duties as a bus driver from June 26, 2017, the date of her cervical spine surgery, through September 2017, when she returned to work for Employer at full-duty capacity. (*Id.* at 88a-89a.) Dr. Murphy also admitted that Claimant has fully recovered from the left hand and wrist contusion. (*Id.* at 94a-95a.)

In opposition to Claimant's claim and review petitions and in support of its termination petition, Employer presented the deposition testimony of Dr. Tadduni, who is board certified in orthopedic surgery.[3] (*Id.* at 134a.) Dr. Tadduni performed an independent medical examination (IME) of Claimant on February 6, 2018, which included reviewing Claimant's medical records, obtaining a history, and performing a physical examination. (*Id.* at 135a-52a.) Based on the results from his IME, Dr. Tadduni opined within a reasonable degree of medical certainty that Claimant had fully recovered from the accepted work injury—*i.e.*, left hand and wrist contusions and a low back sprain. (*Id.* at 152a-53a.) Dr. Tadduni explained that his opinion of full recovery was based upon the following facts: (1) except for when she was recovering from her cervical spine surgery, Claimant continued to work for Employer in her regular-duty position; (2) Claimant was not taking any pain medication; (3) Claimant's physical examination was not supportive of any ongoing problem with her left hand, left wrist, or low back; and (4) the course of treatment,

---

[3] Employer also presented the testimony of Darlene Burke, Employer's dispatch supervisor. Ms. Burke's testimony, however, is not relevant to Claimant's arguments on appeal.

or lack thereof, that Claimant received in connection with the injury to her lumbar spine. (*Id.* at 153a-54a.) Dr. Tadduni stated further that he would not place Claimant under any work restrictions, and that he did not believe that Claimant required any further treatment for the accepted work injury. (*Id.* at 154a-55a.) When asked to explain whether the results of Claimant's MRIs were consistent with his opinions, Dr. Tadduni explained that, while the MRI of Claimant's lumbar spine performed thirteen days after the October 17, 2014 work-related motor vehicle accident evidenced some baseline abnormalities—*i.e.*, facet hypertrophy and desiccation—those abnormalities were preexisting. (*Id.* at 155a-56a.) In addition, with respect to the MRI of Claimant's cervical spine, Dr. Tadduni noted that the MRI was not performed until 2016, and he did not believe that the results related to the clinical picture from the October 17, 2014 work-related motor vehicle accident. (*Id.* at 156a.)

On cross-examination, Dr. Tadduni clarified that the injuries that Claimant sustained as a result of the October 17, 2014 work-related motor vehicle accident were a lumbar sprain superimposed on baseline degenerative changes, a left wrist sprain, and a left hand sprain. (*Id.* at 158a, 161a, 176a.) When questioned about his initial treatment records of Claimant from October and November of 2014, Dr. Tadduni indicated that he was not going to comment on those treatment records because Claimant's counsel had previously threatened legal action against him if he discussed or commented on those records. (*Id.* at 162a-70a, 175a-76a.) Dr. Tadduni also reiterated his opinion that he did not believe that Claimant sustained a neck injury as a result of the October 17, 2014 work-related motor vehicle accident because it took Claimant sixteen months to receive treatment for her neck. (*Id.* at 171a, 187a.) Dr. Tadduni further reiterated his opinion that the findings from

8

the MRIs of Claimant's lumbar spine were preexisting conditions and were not related to the October 17, 2014 work-related motor vehicle accident. (*Id.* at 176a.)

On July 26, 2018, the WCJ issued a decision, denying Claimant's claim and review petitions and granting Employer's termination petition. In so doing, the WCJ summarized the witnesses' testimony and made the following credibility determinations and relevant factual findings:

6. . . . Claimant is credible to an extent, specifically about the occurrence of the work injury, on the basis of her demeanor during her testimony at a hearing before the judge. Dr. Tadduni is more credible than Dr. Murphy for several reasons, to wit: 1.) Dr. Tadduni, as a board[-]certified orthopedic surgeon, has better credentials for the determination of the alleged injuries as those of . . . Claimant than Dr. Murphy, with a board certification in physical medicine and rehabilitation; 2.) Dr. Tadduni's evaluation of . . . Claimant on February 6, 2018[,] was more comprehensive than Dr. Murphy's evaluations of . . . Claimant with Dr. Tadduni's performance of a plethora of tests of . . . Claimant in comparison to Dr. Murphy's evaluations of . . . Claimant without Dr. Murphy's performance of the same tests as those by Dr. Tadduni; 3.) The medical records without consistent complaints about and treatment of . . . Claimant's alleged cervical condition support Dr. Tadduni's opinion about . . . Claimant's lack of the experience of a cervical condition from the work injury; 4.) The results of the diagnostic tests of . . . Claimant, particularly the [MRI] studies, support Dr. Tadduni's opinions, particularly with respect to . . . Claimant's pre[]existing conditions; 5.) The clinical findings during Dr. Tadduni's evaluation of . . . Claimant support Dr. Tadduni's opinions, particularly about . . . Claimant's recovery from the work injury; and 6.) Dr. Murphy's description of the findings of the [MRI] of 2016 of . . . Claimant's lumbar spine, specifically the alleged annular tear, is incorrect.

. . . .

16. Statements by Dr. Tadduni established that . . . Claimant made complaints of neck and low back pain and a radiation of the low back pain down her left leg to Dr. Tadduni on October 28, 2014, that Dr. Tadduni's assessment of . . . Claimant's conditions on October 28, 2014[,] were low back and neck pain, and that Dr. Tadduni didn't attribute . . . Claimant's assessments to any particular cause on October 28, 2014. Although Dr. Tadduni's statements about . . .

9

Claimant's visit on October 28, 2014[,] established that Dr. Tadduni's assessments of . . . Claimant's condition included neck pain, Dr. Tadduni's credible testimony established that . . . Claimant didn't suffer any injury to her neck as a result of the work injury on the basis of the elapse of [sixteen] months between . . . Claimant's work injury and . . . Claimant's receipt of treatment for her alleged neck condition and Dr. Tadduni's testimony established that Dr. Tadduni wouldn't comment, inclusive about the cause, on . . . Claimant's complaints of neck pain to him at the time of her visit on October 28, 2014.

17. Statements by Dr. Tadduni established that . . . Claimant's complaints to Dr. Tadduni on October 30, 2014[,] didn't include any complaints of neck or shoulder conditions on October 30, 2014[,] and that a bone scan of . . . Claimant on October 29, 2014[,] was entirely normal. Statements by Dr. Tadduni established that . . . Claimant saw Dr. Tadduni on November 3, 2014[,] for a follow up for cervical and lumbar pain from the motor vehicle accident at work, that Dr. Tadduni's assessments of . . . Claimant's condition then were pain in the joint with the involvement of the hand and pain in the low back, and that Dr. Tadduni's impressions of . . . Claimant's condition on November 3, 2014[,] were possible left lumbar radiculopathy and a somewhat nonphysiologic pattern of symptoms, as opposed to any cervical condition.

(WCJ's Decision at 3-6.) Based on these credibility determinations and relevant factual findings, the WCJ concluded: (1) Claimant did not meet her burden of proving that her October 17, 2014 work-related injury caused her to sustain any injuries in addition to those identified on the NCP; (2) Claimant did not meet her burden of proving that the description of her injury as set forth on the NCP is materially incorrect; (3) Claimant did not meet her burden of proving that Employer refused to pay for medical treatment that she received for new symptoms/injuries not identified on the NCP; and (4) Employer met its burden of proving that Claimant had fully recovered from her October 17, 2014 work-related injury as of February 6, 2018. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant then petitioned this Court for review.

10

## II.  ARGUMENTS ON APPEAL

On appeal,[4] Claimant argues that the Board erred by affirming the WCJ's decision because:  (1) the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act);[5] (2) the WCJ capriciously disregarded competent evidence of record—*i.e.*, Dr. Tadduni's records from his initial treatment of Claimant—that would support a finding that Claimant sustained a work-related neck injury and work-related lumbar radiculopathy on October 17, 2014; and (3) substantial evidence of record establishes that the description of Claimant's October 17, 2014 work-related injury as set forth in the NCP is materially incorrect.[6]

## III.  DISCUSSION

### A.  Reasoned Decision

Claimant argues that the Board committed an error of law by affirming the WCJ's decision because the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act.  More specifically, Claimant contends that the WCJ's decision is not reasoned because she failed to offer any explanation as to why she

---

[4] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated."  *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).  Further, where appropriate, under *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478 (Pa. 2002) (*Wintermyer*), we must also review a WCJ's decision for capricious disregard of evidence.

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

[6] We have reordered Claimant's arguments for the purposes of discussion.  In addition, we note that, while Claimant has raised different theories of error—*i.e.*, failure to issue a reasoned decision, capricious disregard of evidence, and substantial evidence—all of her arguments revolve around the alleged conflict between Dr. Tadduni's testimony and his initial treatment records.  Given, however, that each theory of error requires us to consider a separate legal standard, we will address each of Claimant's arguments separately.

11

rejected the uncontroverted evidence set forth in Dr. Tadduni's initial treatment records that Claimant sustained a work-related neck injury and work-related lumbar radiculopathy on October 17, 2014, or why she found Dr. Tadduni to be credible when he refused to answer questions regarding his initial treatment records during his deposition. Claimant further suggests that the WCJ was wrong to accept Dr. Tadduni's opinion that Claimant did not suffer a work-related neck injury and work-related lumbar radiculopathy as credible because such opinion was essentially impeached and contradicted by his own treatment records for Claimant.

In response, Employer argues that the WCJ issued a reasoned decision as required by Section 422(a) of the Act, because, in her decision, the WCJ considered all of the medical evidence presented in this case, including, but not limited to, Dr. Tadduni's testimony, Dr. Murphy's testimony, and Dr. Tadduni's initial treatment records for Claimant. Employer suggests that Dr. Tadduni's refusal to answer questions from Claimant's attorney regarding his prior treatment of Claimant stems from Claimant's threat of legal action against Dr. Tadduni and that, regardless of any such refusal, the WCJ considered Dr. Tadduni's initial treatment records in her decision. Employer further contends that the WCJ's decision provides an "ample basis for this Court, like the Board, to perform its appellate function and to verify that there is an identifiable and objective basis within the record" to support the WCJ's findings and conclusions. (Employer's Br. at 19.) Employer also contends that Claimant's "arguments on appeal are broad and scattered[ and] are an attempt to have this Court reweigh evidence and serve as a secondary fact finder which is in general outside the scope of review on appeal." (*Id.* at 22.)

Section 422(a) of the Act provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings

of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to "imagine" the reasons why a WCJ finds the testimony of one witness more credible than the testimony of another witness. *Id.* at 196.

Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his or her credibility determinations where there is conflicting witness testimony. *Id.* A WCJ may satisfy the reasoned decision requirement if she summarized the witnesses' testimony "and adequately explained [her] credibility determinations." *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007), *appeal denied*, 951 A.2d 1167 (Pa. 2008). "Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains [her] credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). In addition, a WCJ cannot simply ignore uncontroverted evidence but, rather, must adequately explain the reasons why she has rejected such evidence. 77 P.S. § 834.

13

The crux of Claimant's argument is that the WCJ's decision is not reasoned because she failed to explain why she rejected the uncontroverted evidence set forth in Dr. Tadduni's initial treatment records of Claimant, which Claimant suggests establishes that Claimant sustained a work-related neck injury and work-related lumbar radiculopathy while working for Employer on October 17, 2014. Claimant fails to recognize, however, that the WCJ did not ignore and/or reject Dr. Tadduni's initial treatment records. Quite to the contrary, in Findings of Fact Nos. 16 and 17, the WCJ specifically discussed Dr. Tadduni's initial treatment records and explained why she did not believe they were contradictory to Dr. Tadduni's opinions that Claimant did not sustain a neck injury or lumbar radiculopathy as a result of the October 17, 2014 work-related motor vehicle accident. Dr. Tadduni's initial treatment records are also not uncontroverted in the manner in which Claimant asserts—*i.e.*, the records establish that Claimant *complained* of low back pain and neck pain that radiated into her left upper extremity, not, as Claimant suggests, that Dr. Tadduni *opined* that Claimant sustained a neck injury and lumbar radiculopathy as a result of the October 17, 2014 work-related motor vehicle accident. In other words, the WCJ accepted Dr. Tadduni's initial treatment records for what they were—documentation of Claimant's complaints relative to her neck, left upper extremity, and low back—and thereafter explained how Dr. Tadduni's testimony was not contradictory to his initial treatment records. For these reasons, we cannot conclude that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act.

## B. Capricious Disregard

Claimant argues that the Board committed an error of law by affirming the WCJ's decision because the WCJ capriciously disregarded competent evidence of

14

record—*i.e.*, Dr. Tadduni's initial treatment records for Claimant. More specifically, Claimant contends that the WCJ's decision "reflect[s] a deliberate disregard of competent evidence that logically could not have been avoided" in rendering her decision.[7] We disagree. A capricious disregard of evidence only occurs when the WCJ deliberately ignores relevant, competent evidence. *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.)*, 851 A.2d 997, 1002 (Pa. Cmwlth. 2004). As explained more fully above, the WCJ did not deliberately ignore Dr. Tadduni's initial treatment records of Claimant. Rather, the WCJ specifically addressed and discussed Dr. Tadduni's initial treatment records of Claimant in Findings of Fact Nos. 16 and 17 and thereafter explained why she did not believe they were contradictory to Dr. Tadduni's opinions that Claimant did not sustain a work-related neck injury or work-related lumbar radiculopathy on October 17, 2014. For these reasons, we cannot conclude that the WCJ capriciously disregarded competent evidence of record.

### C. Substantial Evidence

Claimant argues that the Board committed an error of law by affirming the WCJ's decision because the substantial evidence of record establishes that the description of Claimant's October 17, 2014 work-related injury as set forth in the NCP is materially incorrect. More specifically, Claimant essentially contends that the initial treatment records of Dr. Tadduni, Employer's own expert, establish that Claimant sustained a work-related neck injury and work-related lumbar

---

[7] Employer does not advance a specific argument in response to Claimant's contention that the WCJ capriciously disregarded competent evidence of record.

radiculopathy on October 17, 2014, and, therefore, the WCJ should have amended the NCP to include such injuries.[8]  Again, we disagree.

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004).  As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province.  *Id.*  If the WCJ's findings are supported by substantial evidence, they are binding on appeal.  *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004).  In determining whether the WCJ's findings are supported by substantial evidence, we may not reweigh the evidence or the credibility of the witnesses but must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole.  *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015).  It is irrelevant whether there is evidence to support contrary findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings.  *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Pursuant to Section 413(a) of the Act,[9] "the WCJ may amend [or correct] the NCP at any time during litigation of any petition if the evidence shows that the injury sustained in the original work incident is different or more expansive than that listed in the NCP."  *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013), *appeal denied*, 92 A.3d 812 (Pa. 2014) (citing

---

[8] Employer also does not advance a specific argument in response to Claimant's contention that the substantial evidence of record supports a finding that the description of her injury as set forth in the NCP is materially incorrect.

[9] 77 P.S. § 771.

16

*Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009)). "The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect." *Id.* A review petition seeking to add additional injuries to the NCP that were not previously accepted by Employer carries the same burden as a claim petition. *Liveringhouse v. Workers' Comp. Appeal Bd. (ADECCO)*, 970 A.2d 508, 512 (Pa. Cmwlth.), *appeal denied*, 985 A.2d 220 (Pa. 2009). Pursuant to Section 301(c)(1) of the Act,[10] an employee's injuries are compensable if they "(1) arise[] in the course of employment and (2) [are] causally related thereto." *ICT Grp. v. Workers' Comp. Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927, 930 (Pa. Cmwlth. 2010). Further, an employee must demonstrate that she is disabled as a consequence of the work-related injury. *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991).

Here, Claimant has framed her issue in terms of whether there is substantial evidence to support a finding that was not made by the WCJ—*i.e.*, whether there is substantial evidence of record to establish that the description of Claimant's work-related injury as set forth in the NCP is materially incorrect and should include a neck injury and lumbar radiculopathy. The real issue before this Court, however, is whether there is substantial evidence of record to support the WCJ's necessary findings, in this instance, that the NCP is not materially incorrect because Claimant's alleged neck injury and lumbar radiculopathy are not causally related to the October 17, 2014 work-related motor vehicle accident. While Dr. Murphy may have opined that Claimant sustained both a neck injury and lumbar radiculopathy as a result of the October 17, 2014 work-related motor vehicle accident, Dr. Tadduni opined that Claimant's neck injury and lumbar radiculopathy were not causally

---

[10] 77 P.S. § 411(1).

17

related to the October 17, 2014 work-related motor vehicle accident and that the only work-related injuries that Claimant sustained on October 17, 2014, were a lumbar sprain superimposed on baseline degenerative changes, a left wrist sprain, and a left hand sprain. As discussed more fully above, Dr. Tadduni's initial treatment records do not contradict his testimony and/or establish that Claimant sustained a work-related neck injury or work-related lumbar radiculopathy on October 17, 2014. Rather, such records simply document Claimant's reported complaints. Ultimately, the WCJ credited Dr. Tadduni's testimony over Dr. Murphy's testimony. Dr. Tadduni's credible testimony constitutes substantial evidence to support the WCJ's finding that the NCP is not materially incorrect—*i.e.*, that Claimant did not sustain a neck injury or lumbar radiculopathy as a result of the October 17, 2014 work-related motor vehicle accident. We stress that it does not matter if there is evidence in the record that could support a finding contrary to that made by the WCJ; the only inquiry is whether there is substantial evidence of record to support the WCJ's findings. *Hoffmaster*, 721 A.2d at 1155. The WCJ, as the ultimate fact-finder, had the discretion to credit Dr. Tadduni's testimony over Dr. Murphy's testimony. For these reasons, we cannot conclude that the Board committed an error of law by affirming the WCJ's decision because there is substantial evidence of record to support the WCJ's finding that the description of Claimant's injury as set forth in the NCP is not materially incorrect.

## IV. CONCLUSION

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christine Stacy-McCormick,       :
                Petitioner    :
                           :
        v.             :    No. 1698 C.D. 2019
                           :
Workers' Compensation Appeal   :
Board (Ridley School District),    :
                Respondent  :

# **O R D E R**

AND NOW, this 10th day of November, 2020, the order of the Workers' Compensation Appeal Board, dated November 5, 2019, is hereby AFFIRMED.

P. KEVIN BROBSON, Judge
