IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Allentown, : 
                Petitioner : 
                 : 
        v. : No. 593 C.D. 2020
                 : Submitted: October 23, 2020
Workers' Compensation Appeal Board : 
(Bryant, Jr.), : 
                Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: March 11, 2021

The City of Allentown (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied its termination petition. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Jack Bryant, Jr.'s (Claimant) work-related injuries exceeded what had been listed on the Notice of Compensation Payable (NCP) and that Employer failed to prove that Claimant was fully recovered from the injuries on the corrected NCP. Upon review, we affirm.

## Background

Claimant was employed as a firefighter, and his duties included assisting paramedics on ambulance calls. On December 9, 2013, while lifting a patient, Claimant felt sudden pain in the area of his right scapula. Employer issued

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

a medical-only NCP on March 25, 2014, describing the work injury as "[u]pper back [s]train." Certified Record (C.R.), Item 18, at 1. On April 23, 2014, Employer issued an NCP describing the work injury as an "[a]cute strain" to the thoracic spine and paid disability benefits. C.R., Item 16, at 1. When Claimant returned to work on July 3, 2014, his disability benefits were suspended.

On August 22, 2018, Employer filed a termination petition alleging that Claimant had fully recovered as of January 8, 2018. At the first hearing before the WCJ, the following exchange took place:

> [WCJ]: ... I've uploaded the [medical-only NCP], which I believe was the first [NCP] that was filed. It was a medical-only at that point, identifying an upper-back injury. The reason I've uploaded that was, in our discussions, *I was advised that the – on an area of the body we're talking about is cervical with possible symptomology going into the thoracic region.* So, the upper back seems to be a fairly good way to describe it. However, everyone's in agreement that we're also talking the neck. So, we're not being that specific about thoracic levels or cervical levels. *We're talking about neck and upper-back area....* [D]oes that fairly accurately summarize the discussions we had off the record regarding the body part and the injury we're talking about?
>
> [Employer's Counsel]: Yes, Judge, it does.
>
> [Claimant's Counsel]: It does.

Hearing Transcript, 10/24/2018, at 6-7; C.R., Item 9, at 6-7 (emphasis added).

In support of its termination petition, Employer presented the deposition testimony of Don Ko, M.D., who is board certified in physical medicine and rehabilitation. On December 28, 2017, Dr. Ko conducted an independent medical examination (IME) of Claimant, obtained a history of the work injury, and reviewed Claimant's medical records. Dr. Ko noted that a magnetic resonance

2

imaging (MRI) of Claimant's cervical spine dated January 11, 2016, showed a disc protrusion at the C6-7 level, which caused "some narrowing and impingement on the right side." Notes of Testimony (N.T.), 2/28/2019, at 10; Reproduced Record at 64a (R.R. __).

At the time of Dr. Ko's evaluation, Claimant was working full time. He continued to complain of pain in his right shoulder, for which he received cervical epidural steroid injections from Dr. Robert Wertz with good results. Claimant was no longer on pain medications.

Dr. Ko testified that Claimant's physical examination was unremarkable except for "trigger point tenderness" in Claimant's right paraspinal cervical muscles and the right upper trapezius muscle, which Dr. Ko attributed to a "sprain/strain type of injury." *Id.* at 16, 18; R.R. 70a, 72a. Dr. Ko opined that Claimant suffered from neck pain attributable to the cervical strain; right shoulder pain due to thoracic strain; and right cervical disc displacement at the C6-7 level. The neck pain and right shoulder pain were work-related but, nevertheless, "had resolved," because a soft tissue injury would not last beyond six months. *Id.* at 20; R.R. 74a. The cervical disc displacement was not work-related. Further, Dr. Ko did not attribute Claimant's right shoulder pain to the right cervical disc displacement because a disc herniation at the C6-7 level would cause radiating pain in the arm and hand, not in his shoulder. *Id.* at 21; R.R. 75a.

On cross-examination, Dr. Ko agreed that the January 11, 2016, MRI and an earlier MRI of December 4, 2015, both showed a right side disc protrusion at the C5-6 level. Dr. Ko acknowledged that Claimant's medical record did not reveal any preexisting condition relating to Claimant's cervical area or any trauma other than the December 9, 2013, work incident. Dr. Ko testified that he did not know the

3

cause of the trigger point tenderness he observed during his physical examination.[2] N.T., 2/28/2019, at 29-30; R.R. 83a-84a.

In opposition to the termination petition, Claimant testified in person before the WCJ on April 3, 2019. Since his work injury on December 9, 2013, Claimant had undergone medical treatment and pain management. Dr. Robert Mauthe performed an IME on Claimant in October 2015, and referred him to a spine surgeon. The surgeon did not recommend surgery and in 2016 referred Claimant to

---

[2] Specifically, Dr. Ko testified:

> [Counsel:] [I]n December of 2017[,] you're making a positive finding of trigger point tenderness at the right paraspinal cervical muscle and trigger points at the right scapular region; correct?
>
> [Dr. Ko:] Correct.
>
> [Counsel:] And as I understand your direct testimony, [Claimant] in your opinion only had from the work injury a shoulder strain and a neck strain; correct?
>
> [Dr. Ko:] Correct.
>
> [Counsel:] All right. And you've also testified that those kind of work injuries usually recover at the most … in six months; is that fair?
>
> [Dr. Ko:] That's fair.
>
> [Counsel:] All right. And obviously more than six months passed from the date of the injury to the date of your exam; correct?
>
> [Dr. Ko:] Correct.
>
> [Counsel:] All right. So why is he still having those trigger point tenderness if they're attributable to a strain or a sprain?
>
> [Dr. Ko:] Well, just because he has those tenderness does not mean that it was from [] the work injury.
>
> [Counsel:] What does it mean? It's from the cervical displacement, isn't it?
>
> [Dr. Ko:] I do not believe so.
>
> [Counsel:] Well, what do you attribute it to then? If he's fully recovered from the strain and sprain and it's not attributable to the disc displacement, what do you attribute it to?
>
> * * *
>
> [Dr. Ko:] I mean, the physical exam finding is what it is. I mean, if you're asking me where is it from, I mean, I have no idea.

N.T., 2/28/2019, at 29-30; R.R. 83a-84a.

Dr. Wertz, with whom he continues to treat. Claimant testified that he continues to experience pain mainly in the right scapula area, which at times radiates into his neck. The periodic injections he received from Dr. Wertz would help "for a while," *i.e.*, usually "three or four months," depending on the pain levels. N.T., 4/3/2019, at 23; R.R. at 46a. Claimant also takes over-the-counter medicine for pain relief. Claimant testified that his pain complaints have been about the same since the work injury, which is the only trauma to which he could attribute the pain. Claimant denied having any treatment for his cervical spine prior to the work incident.

Claimant also presented the deposition testimony of Dr. Wertz, who is board certified in anesthesiology with a subspecialty in pain management. Dr. Wertz testified that he has treated Claimant since February 2016, at which time he obtained a history of the work incident. Claimant complained of pain at the base of the right side of the neck and inside the right shoulder blade, which has persisted since the work injury without abating. The January 11, 2016, MRI revealed two small lower cervical disc herniations at C5-6 and C6-7. Dr. Wertz believed the herniations caused Claimant's pain and treated them with cervical epidural injections. The injections relieved the pain for two or three months, "sometimes[] a little bit longer." N.T., 3/26/2019, at 12; R.R. 112a. Dr. Wertz opined that Claimant is not a candidate for surgery because he does not have radicular symptoms into his arm. Claimant's future course of treatment would continue to be palliative.

Dr. Wertz testified that Claimant's cervical MRI of September 25, 2018, showed persisting herniations at C5-6 and C6-7. Dr. Wertz diagnosed Claimant as having chronically herniated discs in his lower cervical spine which cause axial pain. Claimant's complaints matched the result of the MRIs and have been consistent throughout the course of treatment. *Id.* at 18; R.R. 118a. Dr. Wertz

5

opined that the disc herniations were caused by Claimant's work injury, from which Claimant has not fully recovered.

Employer objected to Dr. Wertz's testimony to the extent he attributed Claimant's right shoulder pain to the cervical disc herniations, which were not accepted in the NCP. Employer asserted that Claimant was barred by the three-year statute of limitations in Section 413 of the Workers' Compensation Act (Act)[3] from amending the description of injury to include the cervical disc herniations.

## WCJ's and the Board's Decisions

The WCJ denied Employer's termination petition. In so doing, the WCJ credited Claimant's testimony that he continues to experience pain in his neck and scapular area, which are relieved by the cervical epidural injections. The WCJ credited Dr. Wertz's testimony over Dr. Ko's, noting that Dr. Wertz has treated Claimant for years, whereas Dr. Ko saw Claimant on one occasion. In accordance with Dr. Wertz's testimony, the WCJ found that Claimant's cervical disc herniations were work-related. The WCJ rejected the conflicting testimony of Dr. Ko that the trigger point tenderness revealed in his physical examination of Claimant was unrelated either to the cervical and thoracic strain or to the cervical disc herniations.

As such, the WCJ found the description of the work injury in the NCP to be "materially incorrect" and amended it to include "annular tears/disc herniations at C5-6 and C6-7," from which Claimant has not fully recovered. WCJ Decision at 11, Conclusions of Law No. 3; C.R., Item 4, at 11. The WCJ opined that the amendment more accurately described the "upper back strain" that Employer accepted in its medical-only NCP. WCJ Decision at 10; C.R., Item 4, at 10. The WCJ rejected Employer's statute of limitations argument, holding that Section 413

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§771-772.

6

of the Act authorizes the amendment of an incorrect NCP at any time. Accordingly, the WCJ overruled Employer's objection to Dr. Wertz's testimony that Claimant's cervical disc herniations were work-related.

Employer appealed, and the Board affirmed the WCJ's decision. The Board held that the WCJ did not violate Section 413 or Employer's due process rights by amending the NCP. Employer had notice that the injury description was an issue because the parties discussed the nature of the work injury at the first hearing before the WCJ, where they agreed that the work injury involved Claimant's neck. Further, the expert testimony of Dr. Ko and Dr. Wertz centered on Claimant's cervical condition. The Board held that the WCJ acted within his discretion in crediting Dr. Wertz's testimony to find that Claimant has not fully recovered from the work-related cervical disc herniations. Employer then petitioned for this Court's review.

## Appeal

On appeal,[4] Employer presents three issues for our consideration, which we combine into two for clarity. First, Employer argues that the WCJ's expansion of the work injury description to include the cervical disc herniations violated Employer's due process rights and the three-year statute of limitations in Section 413 of the Act. Likewise, the WCJ erred in overruling Employer's objection to using Dr. Wertz's testimony as the basis for revising the accepted work injuries in the NCP. Second, Employer argues that the WCJ and the Board erred in denying Employer's termination petition because Employer proved that Claimant fully

---

[4] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

7

recovered from the accepted injury of acute strain of the upper back and thoracic spine. In any event, Dr. Wertz's testimony about Claimant's herniated cervical discs was equivocal. Stated otherwise, the WCJ's finding that Claimant has not fully recovered from the December 9, 2013, work injury was not supported by substantial evidence.

### I. Amendment to NCP

Employer first argues that the WCJ erred in amending the NCP to include the disc herniations at C5-6 and C6-7. Although a WCJ can expand the work injury in the absence of a review petition, it was inappropriate to do so here because Employer did not have notice that the injury description was at issue in the proceeding. Employer Brief at 15 (citing *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009)). Employer asserts that the first time "there was any mention of the compensable injury being other than that set forth in the two [NCPs] was at the deposition of Claimant's medical witness, [Dr. Wertz]." Employer Brief at 16.

Employer asserts, in the alternative, that the expansion of the compensable injury by the WCJ is time-barred by the statute of limitations in Section 413 of the Act, which provides that a claimant who returns to work for more than three years and has received no payments of compensation is barred from seeking review of the NCP for mistake. Claimant returned to work on July 3, 2014, and had worked over three years when Employer filed the instant termination petition. As such, Employer asserts, Claimant could no longer seek a change to the NCP that limited Claimant's work injury to an upper back/thoracic spine strain, and the WCJ thus erred in overruling Employer's objection to Dr. Wertz's testimony.

8

Claimant counters that the cervical disc herniations do not constitute a "separate injury" but are "another diagnosis of the initial injury." Claimant Brief at 10. Employer clearly was aware that Claimant had problems with his neck because it had been paying for his cervical epidural injections.[5] Indeed, the issue of the herniated cervical discs was fully reviewed. Claimant contends that under Section 413 of the Act, an incorrect NCP may be corrected at any time and in any proceeding. Accordingly, the WCJ properly overruled Employer's objection to Dr. Wertz's testimony that Claimant's work incident caused cervical disc herniations.

We begin our analysis with a review of Section 413 of the Act, which states, in pertinent part, as follows:

> *A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable* and an original or supplemental agreement or upon petition filed by either party with the department, or *in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.*
>
> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or any award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.... Provided, That, except in the case of eye injuries, *no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent*

---

[5] Employer concedes in its brief that its termination petition "was aimed at [Employer's] continuing responsibility for this treatment [of epidural steroid injections]." Employer Brief at 23.

9

*payment of compensation made prior to the filing of such petition....* And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. §§771-772 (emphasis added). In sum, an NCP may not be modified unless a petition is filed within three years of the most recent payment of compensation, but it may be "corrected" at any time.

In *Cinram Manufacturing*, 975 A.2d at 580-81, the Pennsylvania Supreme Court interpreted the first paragraph of Section 413 to mean that "corrective amendments" to an accepted work injury do not require a review petition.[6] Rather, the WCJ can order the correction where the evidence supports it. The Supreme Court cautioned, however, that due process requires that an employer be given a reasonable opportunity to contest a corrective amendment:

> It should also be noted that the language of Section 413(a) is discretionary—a workers' compensation judge "may" at any time correct a notice of compensation payable…. The Legislature therefore contemplated that there are circumstances in which it would be inappropriate for a workers' compensation judge to direct a corrective amendment of a notice of compensation payable, including in a termination proceeding.[] *Moreover, the procedures applied by a workers' compensation judge must obviously comport with due process norms, . . . ; and, therefore, reasonable prior notice and a fair opportunity to respond must be provided to the employer prior to the implementation of a corrective amendment….*

---

[6] On the other hand, where a claimant develops a new injury as a consequence of the original injury, the WCJ cannot add that injury to the NCP without a review petition. *Cinram Manufacturing*, 975 A.2d at 581.

10

*Id.* at 582 (internal citations and footnote omitted) (emphasis added). "Whether an employer has had a fair opportunity to contest the corrective amendment is determined on a case-by-case basis by looking at the totality of circumstances." *Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367, 374 (Pa. Cmwlth. 2015).

In *Cinram Manufacturing*, the NCP described the work injury as a lumbar strain/sprain. In the termination proceeding, the claimant's medical expert testified that the work injury was an aggravation of a preexisting disc herniation that caused nerve impingement. The WCJ credited that evidence; denied the termination petition; and amended the NCP to include nerve impingement. The Supreme Court affirmed the corrective amendment, noting that the employer's experts addressed the nerve impingement in their testimony and opined that it was unrelated to the work incident. Further, the employer did not specify what other evidence it would have presented had it been given express notice that the claimant sought a corrective amendment. *Cinram Manufacturing*, 975 A.2d at 582 n.8.

In *Walter*, in a termination proceeding, the WCJ amended the NCP to include left suprascapular neuropathy, from which the claimant had not fully recovered. The Board reversed the WCJ for the stated reason that the employer did not have notice that the injury description was at issue in the termination proceeding. On further appeal, this Court reversed the Board. We concluded that the employer had adequate notice of the corrective amendment because it was announced on the first day of the hearing, and the medical experts of both parties testified about the claimant's chronic suprascapular neuropathy and whether it was work-related. The employer had a fair opportunity to contest the corrective amendment because it was

11

"unclear what additional evidence [the employer] could have presented on whether the suprascapular neuropathy was work-related." *Walter*, 128 A.3d at 374-75.

Here, both the medical-only NCP and the NCP described the work injury as acute strain of the upper back and thoracic spine. However, Claimant has been treating for his cervical pain, and Employer has paid for his cervical epidural injections. At the first WCJ hearing on October 24, 2018, both parties agreed that "[they were] talking about [Claimant's] *neck and upper-back area*." Hearing Transcript, 10/24/2018, at 6-7; C.R., Item 9, at 6-7 (emphasis added).

Further, Employer's medical expert, Dr. Ko, testified that Claimant's work injury involved a neck strain. He also opined that the herniated discs were not work-related or medically significant. Employer cross-examined Dr. Wertz on his opinion that Claimant's work injury included cervical disc herniations. It is unclear what other evidence Employer would have presented had it been given express notice of the corrective amendment. *Cinram Manufacturing*, 975 A.2d at 582 n.8; *Walter*, 128 A.3d at 375. We conclude that Employer had a fair opportunity to contest the corrective amendment to Claimant's NCP.

We reject Employer's argument that the three-year statute of limitations in Section 413 of the Act requires a different result. In *Fitzgibbons v. Workers' Compensation Appeal Board (City of Philadelphia)*, 999 A.2d 659, 663-64 (Pa. Cmwlth. 2010), this Court pointed out that the first paragraph of Section 413 of the Act applies when a party is seeking to correct an NCP, and the second paragraph applies when a party is seeking to expand the description of the work injury to include consequential injuries, *i.e.*, injuries that occurred as a result of the work injury after issuance of the NCP. In either case, a petition must be filed within three years of the most recent payment of compensation.

12

Here, it was in the course of Employer's termination petition that the WCJ corrected the NCP based on the evidence presented in the proceeding. The WCJ is allowed to do so "at any time … in the course of the proceedings under any petition pending" before the WCJ, "if it be proved that such notice of compensation payable or agreement was in any material respect incorrect." Section 413 of the Act, 77 P.S. §771. Accordingly, the Board did not err in concluding that the WCJ's corrective amendment of the NCP to include the disc herniations at C5-6 and C6-7 did not violate Section 413 of the Act or Employer's due process rights. The WCJ properly allowed Dr. Wertz's testimony that Claimant's work incident caused more injuries than an acute strain of the upper back and thoracic spine.

## II. Substantial Evidence

Employer argues that, in any case, substantial evidence does not support the WCJ's finding that the disc herniations at C5-6 and C6-7 were part of the December 9, 2013, work injury. Dr. Ko testified that disc herniations at those levels would cause radiating pain, which Claimant does not have. As such, Employer asserts that its termination petition should have been granted because Dr. Ko testified that Claimant fully recovered from his acute strain of the upper back and thoracic spine, which was the only injury listed on Employer's NCPs.

Claimant counters that Dr. Ko did not contest the MRI findings that Claimant has suffered cervical disc herniations. Further, Dr. Ko's testimony that Claimant has fully recovered from the work injury was not supported by his IME, which revealed that Claimant still experiences pain in his right shoulder. Similarly, there was no evidence of either a preexisting condition or an intervening event that could have contributed to Claimant's herniated discs; rather, Claimant's symptoms have been persistent since the 2013 work injury. Claimant contends that the WCJ

13

did not err in crediting Dr. Wertz's testimony, who treated Claimant and provided cervical epidural injections since 2016.  We agree.

Dr. Ko opined that the cervical disc herniations were not work-related because Claimant did not experience radiating pain in his arm, a typical symptomatology for a herniated disc at C6-7.  Nevertheless, Dr. Ko acknowledged that Claimant does have herniated cervical discs as found in the MRIs.  By contrast, Dr. Wertz testified that Claimant's complaints of pain correlated with the MRI findings and have been consistent throughout the course of treatment.  Dr. Wertz thus opined that the cervical disc herniations were caused by the 2013 work injury, and there was no evidence that Claimant sustained any other trauma that could have caused the herniations.  The WCJ credited Dr. Wertz's testimony over Dr. Ko's, and this is the prerogative of the factfinder.  *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 17-19 (Pa. Cmwlth. 2008) (prerogative of the WCJ to determine the credibility of witnesses and the weight to be accorded evidence).

The relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding."  *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).  The Court must view the evidence in a light most favorable to the party that prevailed before the factfinder.  In light of the above, we conclude that there is substantial evidence to support the WCJ's finding that Claimant has not fully recovered from the 2013 work injury, which included disc herniations at the C5-6 and C6-7 levels.  The Board thus did not err in affirming the WCJ's denial of Employer's termination petition.

14

**Conclusion**

The WCJ was empowered under Section 413 of the Act to amend the description of Claimant's work injury where the evidence proved that the NCP was materially incorrect. Employer had a fair opportunity to contest the corrective amendment. Substantial evidence supports the WCJ's finding that Claimant sustained herniated discs in the 2013 work incident and has not fully recovered from the injuries. As such, the WCJ did not err in amending the NCP to include disc herniations at the C5-6 and C6-7 levels and in denying Employer's termination petition.

Accordingly, we affirm the Board's June 4, 2020, adjudication.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Allentown, : 
                Petitioner : 
                 : 
        v. :   No. 593 C.D. 2020
                 : 
Workers' Compensation Appeal Board : 
(Bryant, Jr.), : 
              Respondent : 

# **O R D E R**

AND NOW, this 11th day of March, 2021, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter, dated June 4, 2020, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge