IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Marvelli, : 
               Petitioner : 
                : 
      v. : No. 561 C.D. 2021
                : 
US Foods, Inc. (Workers' : 
Compensation Appeal Board), : 
               Respondent : Submitted: May 27, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                          FILED: November 2, 2022


Joseph Marvelli (Claimant) petitions this Court for review of the April 28, 2021 Order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a workers' compensation judge (WCJ) to deny Claimant's Claim, Reinstatement, and Review Petitions (collectively, Petitions), and to grant the Review Petition submitted by US Foods, Inc. (Employer), pursuant to the Worker's Compensation Act (Act).[1] Claimant argues that the WCJ erred by disregarding factual testimony which proved that his disabling back injuries were caused by a workplace incident, and by failing to reimburse Claimant for litigation costs under

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Section 440(a) of the Act,[2] 77 P.S. § 996(a). After careful review, we affirm the Board.

## I. Background

At the time of the incidents leading to this case, Claimant worked for Employer, a foodservice distributor, as a territory sales manager. Certified Record (C.R.), Item No. 13, WCJ Decision, Finding of Fact (F.F.) No. 6(a). On September 14, 2017, he sustained an injury while taking items for a delivery out of the back seat of his truck. C.R., Item No. 31. Employer accepted liability for the injury through a medical-only Notice of Compensation Payable (NCP), which described the injury as a strain or tear of the shoulder. *Id.*

On February 16, 2018, Claimant submitted his Petitions, each of which alleged injuries to the neck, shoulder, and back, including lumbar radiculopathy, as a result of his work-related accident.[3] C.R., Items Nos. 2, 5, 6. Employer filed a review petition of its own, requesting that the injury description be amended to refer to "a cervical strain" rather than a shoulder strain. C.R., Item No. 10.

In support of his Petitions, Claimant offered his own testimony at a hearing before the WCJ on April 10, 2018; that of his girlfriend, Tara Nischan,[4] at a hearing

---

[2] Added by the Act of February 8, 1972, P.L. 25.

[3] It is not clear why Claimant submitted Claim and Reinstatement Petitions to the Workers' Compensation Bureau in addition to his Review Petition. In cases where an injury has already been accepted, a claim petition is only necessary if a claimant alleges subsequent, compensable injuries that are not a natural consequence of the workplace incident. *Jeanes Hospital v. Workers' Comp. Appeal Bd. (Hass)*, 872 A.2d 159, 163 (Pa. 2005) (disapproved of on other grounds by *Cinram Mfg. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 581 (Pa. 2009)). Meanwhile, the Reinstatement Petition was unnecessary because Claimant's medical-only benefits were never suspended or terminated. Accordingly, although we refer to all three of Claimant's Petitions together, the Claim and Reinstatement Petitions will not be discussed separately.

[4] Some items in the record misspell Ms. Nischan's surname as Nishan.

on September 17, 2018; and that of his treating physician, Dr. Jeffrey McConnell, who testified at a July 28, 2018 deposition. Employer offered the testimony of Dr. Robert Mauthe, who testified at an August 14, 2018 deposition following an independent medical examination (IME) of Claimant.

### A. Claimant's Evidence

In his testimony, Claimant explained that as a territory sales manager, his duties included delivering products to Employer's commercial customers. C.R., Item No. 23, Notes of Testimony (N.T.), 4/10/18, at 8. On the morning of September 14, 2017, Claimant delivered an order consisting of several boxes of food to one of Employer's customers. *Id.* at 12. After retrieving three of the boxes from the back seat of his truck, Claimant used his left leg to close the truck's door. *Id.* at 13. Immediately, he felt a sensation akin to "an electric shock" running from the back of his head, through his shoulders and hands, and down to his buttocks. *Id.* Claimant "didn't think anything of it," assuming that he had just "pulled a muscle," and completed his delivery. *Id.* After experiencing the sensation a second time while climbing back into the truck, Claimant reported the incident to his boss after returning to the office. *Id.* at 14.

Two days later, Claimant visited an urgent care center, where a physician ordered an x-ray and prescribed Claimant an anti-inflammatory and muscle relaxer. *Id.* at 19. On September 18, 2017, Claimant submitted an incident report to Employer, which indicated that Claimant's injury was located "[w]here the shoulders intersect in the middle of the back[,]" and described "[s]harp pain in [the] neck and shoulders [radiating] down [his] arms leaving [his] fingertips tingling." C.R., Item No. 35. Claimant worked from home for the next three months. N.T., 4/10/18, at 27.

In December 2017, Claimant's family physician referred him to a surgeon, Dr. Jeffrey McConnell, who performed an operation on Claimant's back on December 12, 2017. *Id.* at 25. While recovering from surgery, Claimant began regular physical therapy sessions, which were ongoing at the time of his testimony. *Id.* at 26. Claimant testified that since his surgery, the pain in his buttocks has subsided, but numbness in his right foot has persisted. *Id.* at 27. Claimant testified that he has not returned to work since the surgery, explaining that his physicians ordered him not to do so. *Id.* at 28.

Claimant acknowledged that on October 18, 2017, he completed a questionnaire for Dr. McConnell in which he stated that his back pain had suddenly begun on September 30, 2017. *Id.* at 38. He explained that on that date, a Saturday, he was attending one of his son's soccer games. *Id.* at 24. While seated in a folding lawn chair, Claimant found himself unable to stand up on his own; his girlfriend, and unnamed others, had to pull him out of the chair by his arms. *Id.* at 23. Claimant acknowledged that his mention of the September 30, 2017 incident was his first written reference to his back and leg pain. *Id.* at 39. Claimant explained that he had been instructed to give a non-work-related cause of his injuries on the questionnaire for insurance purposes. *Id.* at 38-39.

Ms. Nischan was Claimant's coworker and his live-in partner. C.R., Item No. 24, N.T., 9/17/18, at 7. She learned of the work incident in the evening on the day after it occurred, when Claimant complained to her of pain in his neck and back. *Id.* at 8. Claimant did not specify where he felt the back pain, only indicating "his neck and his back," and likening it to the feeling of "a cross in his back." *Id.* at 10, 11. Ms. Nischan had no recollection of complaints of leg pain from Claimant in the two weeks following the workplace incident. *Id.* at 19.

4

The soccer game at which Claimant experienced severe pain took place approximately 20 minutes by car from their home. *Id.* at 11. When they arrived, Claimant struggled to get out of the car, and was unable to walk to the field without the use of a walking stick. *Id.* at 12. At the game's conclusion, Claimant could only get out of the chair when Ms. Nischan grabbed him by the arms and pulled him out. *Id.* at 13. Ms. Nischan then carried the lawn chair to her car, and pulled up to Claimant to minimize the distance that he would need to walk. *Id.* at 14.

Ms. Nischan did not accompany Claimant to any of his medical appointments until after his December 12, 2017 surgery. *Id.* at 23. However, she met him immediately following the October 18, 2017 appointment with Dr. McConnell. *Id.* at 15. As Claimant explained to her, the doctor had concluded that his neck and back ailments were "completely different" from one another and would be treated separately. *Id.* at 16.

Dr. Jeffrey McConnell recalled that Claimant first visited his office on October 18, 2017, at which Claimant presented with pain that radiated from Claimant's back into his right leg and foot, along with numbness and tingling. C.R., Item No. 27, McConnell Dep., 7/28/18, at 7, 40. Claimant reported to Dr. McConnell that those symptoms originated on September 30, 2017, and were "caused by bending to pick up [a] folding lawn chair." *Id.* at 40.

At the conclusion of the October 18, 2017 appointment, Dr. McConnell diagnosed Claimant with lumbar radiculopathy due to the nature of his pain symptoms. *Id.* at 8-9. A magnetic resonance image (MRI) conducted on November 6, 2017, revealed a herniated disc at L5-S1 and nerve compression at S1, both of which were consistent with Claimant's pain complaints. *Id.* at 11-12. Dr. McConnell performed a microdiscectomy of Claimant on December 12, 2017. *Id.*

5

at 13. Neither the MRI nor the operation could establish how long Claimant's disc had been herniated. *Id.* at 14. Dr. McConnell recalled that he ordered Claimant out of work immediately following surgery but, by April 2018, he began lifting Claimant's restrictions so he could return to light-duty work. *Id.* at 24.

Claimant next presented with neck pain on January 23, 2018. *Id.* at 17. It was then that Claimant first advised Dr. McConnell of the September 14, 2017 work injury. *Id.* At that time, Dr. McConnell opted to treat Claimant's neck and back symptoms as "separate problems or incidents." *Id.* at 18. Dr. McConnell maintained that Claimant's neck and lower back ailments were both related to the work incident. *Id.* at 30. When questioned about Claimant's treatment records prior to the date of Dr. McConnell's first examination on October 18, 2017, however, Dr. McConnell acknowledged that he first reviewed them during his deposition. *Id.* at 34.

## B. Employer's Evidence

Dr. Robert Mauthe conducted an IME of Claimant on March 22, 2018, at which Claimant provided a medical history, and he reviewed Claimant's treatment for the work injury. C.R., Item No. 37, Mauthe Dep., 8/18/18, at 14. The first such records were notes from Claimant's visit to the urgent care center on September 16, 2017, which reflected he complained of neck pain, but not back or leg pain. *Id.* at 15. Claimant next visited HealthWorks, an occupational medicine practice, on September 18, 2017. Dr. Mauthe observed that those records, again, only mention Claimant's neck symptoms.[5] *Id.* at 20. Claimant's back and leg symptoms first appear in the October 3, 2017 medical records of Claimant's family physician, who

---

[5] The notes from the September 16, 2017 visit to the urgent care center and from the September 18, 2017 visit to HealthWorks do not appear in the record.

6

noted an onset of those symptoms on the previous Saturday, while Claimant was at his son's soccer game.[6] *Id.* at 24.

Based on the IME, Dr. Mauthe concluded that Claimant sustained a strain of the muscles in his neck and upper back as a result of his September 14, 2017 work injury. *Id.* at 27. Dr. Mauthe ruled out any connection between that incident and Claimant's later reports of lower back and right leg pain which "very clear[ly]" did not arise until the soccer game on September 30, 2017. *Id.* at 28. Dr. Mauthe opined that, if Claimant had actually herniated the disc on September 14, 2017, then he would have alerted his treating physician of the resulting right leg pain. *Id.* at 28. Dr. Mauthe explained that Claimant sustained "a big disc herniation." *Id.* at 38. "This is not your simple back strain . . . . This is true radiculopathy. This is not something that you would not have noticed for weeks. If it was there, it would have been there." *Id.* at 38-39.

Because of Claimant's continued difficulty with lifting, Dr. Mauthe imposed a light-duty restriction on his activities, but otherwise released him to return to work. *Id.* at 29.

### C. The WCJ's Decision

In a December 31, 2018 decision, the WCJ denied Claimant's Petitions and granted Employer's Review Petition. C.R., Item No. 13, WCJ Decision, Conclusions of Law (C.L.) No. 2; Order. The WCJ explained that, to the extent that the two medical experts disagree, he found Dr. Mauthe more credible due to Dr. McConnell's failure to examine previous treatment records before forming his opinion. *Id.*, F.F. No. 8. Those records confirmed Dr. Mauthe's observation that

---

[6] The notes from the October 3, 2017 visit recorded that Claimant complained "of back pain and [right] leg pain since Saturday . . . [; h]e was watching soccer and when trying to grab a chair[,] noticed right leg pain." C.R., Item No. 36.

"no lower back [or] right leg pain is reported before the September 30[, 2017] incident at a soccer game." *Id.* Even Dr. McConnell's own treatment notes from October 18, 2017, corroborate Dr. Mauthe's opinion. *Id.* The WCJ found Claimant's and Ms. Nischan's testimony to be generally credible, but he was not persuaded by their "medical conclusion" that Claimant's lower back and leg ailments were the result of the September 14, 2017 work injury, "in consideration of the credible expert opinion of Dr. Mauthe." *Id.*, F.F. No. 7.

Claimant appealed to the Board, which remanded due to an error in the language of the WCJ's Order.[7] C.R., Item No. 16, Board Opinion (Op.) at 4. On remand, the WCJ corrected the error and "readopted and reissued" all the factual findings and legal conclusions in his earlier opinion.[8] C.R., Item No. 18, WCJ Remand Decision, F.F. 1; C.L. 1. Claimant again appealed to the Board, which affirmed the WCJ. C.R., Item No. 21, Board Remand Op. at 8. This appeal followed.[9]

---

[7] In his December 31, 2018 decision, the WCJ ordered that Claimant's compensation was to be "SUSPENDED as of Claimant's return to light duty work on April 15, 2018." C.R., Item No. 13, WCJ Decision, Order. Claimant, however, never received wage loss benefits, as Employer had only issued a medical-only NTCP. As the Board noted while remanding, this created a contradiction; if Claimant's Petitions were to be denied, then "the WCJ should not order wage loss benefits to be suspended. On the other hand, if the WCJ wanted Claimant to receive compensation until the return of work on April 15, 2018, the WCJ should grant Claimant's Petitions, at least in part." C.R., Item No. 16, Board Op. at 3.

[8] On remand, the WCJ did not include in his order a suspension of Claimant's purported wage loss benefits. C.R., Item No. 18, WCJ Remand Decision, Order.

[9] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

8

## II. Issues

On appeal, Claimant argues that substantial evidence does not support the WCJ's finding that the September 14, 2017 workplace incident was not the cause of Claimant's lower back injury. Alternatively, Claimant argues that the mechanism of his work injury and his fact testimony establish an obvious causal connection between the injury and his lower back and leg symptoms. Finally, Claimant argues that he should be reimbursed for certain litigation costs pursuant to Section 440(a) of the Act, 77 P.S. § 996(a).

## III. Discussion

A review petition is the appropriate mechanism to secure modification of the injury description in an NCP. *Cinram Mfg.,* 975 A.2d at 581. As in a claim petition, the claimant has the burden of proving all elements to support the claim for benefits. *Jeanes Hosp.*, 872 at 167. Accordingly, the claimant must establish that his injury was sustained during the course and scope of employment and is causally related thereto. *Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997, 1000 (Pa. Cmwlth. 2007). When the connection between the injury and the alleged work-related cause is not obvious, it is necessary to establish the cause by unequivocal medical evidence. *Id.*

Instantly, Claimant submitted a petition arguing that the NTCP should be amended to reflect injuries to his neck, back, and shoulders, including lumbar radiculopathy, and that he "has been disabled and out of work since December 12, 2017." C.R., Item No. 6, Review Petition. Claimant argues that he met his burden of proving those injuries with factual testimony that the symptoms of his lower back injuries developed immediately following the September 14, 2017 incident. Claimant reasons that, because the testimony of both fact witnesses was deemed

9

"generally credible," the WCJ's conclusion that the lower back injury was not work-related is not supported by substantial evidence. He maintains that this conclusion is contradicted by the opinion of Employer's own medical expert.

We first observe that, by deeming a witness's testimony *generally* credible, the WCJ does not commit himself to a wholesale adoption of every statement made by that witness. In his decision, the WCJ immediately qualified her determination by explaining that Claimant's and Ms. Nischan's testimony was "not persuasive" insofar as it conflicted with Dr. Mauthe's expert opinion. WCJ Decision, F.F. No. 7. Credibility and persuasiveness are not identical qualities. A WCJ may find a witness completely credible (that is, stating the truth as he or she believes it) without being persuasive (that is, convincing in support of a particular conclusion). *See Green v. Workers' Comp. Appeal Bd. (US Airways)*, 155 A.3d 140, 149 n.15 (Pa. Cmwlth. 2017) (explaining that the phrase "credible but not persuasive" tends to signify that the WCJ finds a witness to be "testifying *truthfully* . . . but not *convincingly* (emphasis in original)). In this case, the WCJ did not dispute Claimant's or Ms. Nischan's sincerity in recalling Claimant's complaints of back pain in the days following the workplace injury, but simply determined that those recollections did nothing to establish the causal relationship between those symptoms and Claimant's work injury.

In Claimant's view, the WCJ's simultaneous finding that Claimant was "generally credible" and Dr. Mauthe was "persuasive" is a "contradictory" position. Claimant's Br. at 33. He maintains that his own references to "back pain" in early treatment records show that Dr. Mauthe is in error. However, to regard any complaint of back pain as proof of the onset of lumbar radiculopathy would be making a medical conclusion without support in the record. Dr. Mauthe

10

acknowledged that Claimant experienced pain in his back as a result of the September 14, 2017 workplace injury. Pointing to Claimant's own description of the back pain as occurring "where the shoulders intersect," he explained that it was a symptom of Claimant's "upper back cervical sprain."[10] Mauthe Dep., 8/18/18, at 49. The testimony of Dr. McConnell similarly fails to support the conclusion that Claimant asks this Court to reach.

Seemingly aware of the lack of support in the experts' testimony, Claimant changes tack, arguing in the alternative that the WCJ committed legal error by failing to recognize the "obvious causal connection of a back injury to the [September 14, 2017] incident." Claimant's Br. at 35. The finding of an obvious connection would permit Claimant to sidestep the difficulties imposed by the medical testimony by precluding the need for such testimony in the first place. *See Roundtree v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 116 A.3d 140, 144 (Pa. Cmwlth. 2015) (explaining that "medical evidence may not be necessary in cases where the causal connection" between injury and work incident is "obvious"). In support, Claimant cites *Northwest Medical Center v. Workers' Compensation Appeal Board (Cornmesser)*, 880 A.2d 753, 755 (Pa. Cmwlth. 2005), in which this Court observed that a "causal connection is obvious where an individual is doing an act that requires force or strain and pain is immediately experienced at the point of force or strain."

---

[10] Acknowledging the lack of any "specific reference to the low back" in the incident report, Claimant speculates that it was "likely because[,] at the time[,] the low back was less painful than the other injured areas, such that natural focus was on the most painful areas where the intersection of the cross pains occurred." Claimant's Br. at 12. Even if we were to accept this unsupported medical conclusion as fact, it does not strengthen Claimant's position. As Dr. Mauthe explained, it is highly improbable that Claimant would have neglected to mention, or seek treatment for, the lower back pain that he now alleges he experienced on that day: "This is a big disc herniation. This is not your simple back strain . . . . If it was there, it would have been there." C.R., Item No. 37, Mauthe Dep., 8/18/18, at 38-39.

Claimant argues that his experience of "immediate back pain" on September 14, 2017, while carrying out duties requiring force or strain, "establishes the obvious causal connection of a back injury to the [workplace] incident." Claimant's Br. at 35.

Claimant's conclusion depends, once again, on the ambiguity of his reference to "back pain." As discussed, Claimant described the pain following the incident as limited to his neck, shoulders, arms, and the part of the back "[w]here the shoulders intersect." C.R., Item No. 35. Even Claimant's later recollections of sensations felt throughout his back and in his buttocks do not change the fact that, by his own admission, the pain was primarily felt in the *upper* back. As Claimant is well aware, the fundamental question before us is when he sustained his *lower back* injury. A causal connection between the back pain complained of after the workplace incident and his herniated disc, at L5-S1, is by no means obvious; to infer such a connection would require, at a minimum, a medical explanation that is absent from the record.

Since the inference of a causal connection required unequivocal medical testimony, the WCJ properly looked to the medical experts to form his conclusion.

Dr. Mauthe explained that the "standard criteria" for determining causation include "the records most proximate to the incident event," particularly when they show "consistency." Mauthe Dep., 8/18/18, at 45. His examination of the treatment records from the weeks following the September 14, 2017 workplace incident bore a consistent pattern of complaints of pain in Claimant's upper back, neck, arms, and shoulders. There is no mention of lower back or leg pain until Dr. McConnell examined Claimant on October 18, 2017, after the September 30, 2017 incident at the soccer game. Claimant himself repeatedly explained at the time of that appointment that those symptoms did not develop until then. As Dr. Mauthe

12

explained, if Claimant had sustained a disc herniation on September 14, 2017, it is unlikely he would neglect to mention any lower back symptoms, despite having several opportunities to do so.

When asked to explain the difference between the version of events given in the medical records from October, 2017, and the one presented in this litigation, Claimant explained that he was persuaded to give a non-work-related cause for the lower back and leg pain so that he could obtain insurance coverage for the treatment. N.T., 4/10/18, at 38-39. We cannot accept such an explanation. Even if we assume the truth of what Claimant alleges, it fails to account for the September 18, 2017 incident report which, as noted above, omits any complaint of lower back or right leg pain. That document was completed before Claimant would have faced any purported pressure to alter or fabricate his story.

In contrast to Dr. Mauthe's analysis of the treatment records, Claimant's treating physician, Dr. McConnell, conceded that he did not even look at them before forming his opinion on causation. Dr. McConnell's *own* treatment records reiterate that Claimant's lower back and right leg symptoms first arose on September 30, 2017, the day of the soccer game. McConnell Dep., 7/28/2018, at 40. The WCJ cited Dr. McConnell's failure to examine the records, and his acknowledgement of September 30, 2017, as the onset of Claimant's lower back symptoms, as two key reasons for finding Dr. Mauthe's opinions more credible and for accepting them as fact.

The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). Unless made arbitrarily or capriciously, the WCJ's credibility determinations will be upheld on appeal.

13

*Furnari v. Workers' Comp. Appeal Bd. (Temple Inland)*, 90 A.3d 53, 70 (Pa. Cmwlth. 2014). Since the WCJ's credibility findings in the instant matter are well supported by the record, there is no reason to regard them as either arbitrary or capricious.

Lastly, we address Claimant's argument that he should be reimbursed for "witnesses, necessary medical examination, and the value of unreimbursed lost time to attend proceedings," pursuant to Section 440(a) of the Act, 77 P.S. § 996. Claimant's Br. at 41. Claimant maintains that he is entitled to reimbursement because his "Review Petition should have been granted"; bafflingly, he also speculates that the WCJ denied that petition with the express purpose of depriving Claimant of reimbursement. *Id.* It is well settled that a claimant may only be awarded costs relative to a specific issue on which the claimant prevailed. *Jones v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 874 A.2d 717, 721 (Pa. Cmwlth. 2005). Since Claimant's review petition was properly denied, we do not agree that he is entitled to any litigation costs.

## IV. Conclusion

The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of witnesses; rather, the Board and the appellate court must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Gary v. Workers' Comp. Appeal Bd. (Philadelphia Sch. Dist.)*, 18 A.3d 1282, 1285 n.1 (Pa. Cmwlth. 2011). We see no occasion to disturb the WCJ's decision granting Employer's Review Petition and

14

denying Claimant's Petitions, as that decision depends on credibility determinations that are well supported by the record. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Marvelli, : 
                Petitioner : 
                            : 
     v. : 
                            : 
US Foods, Inc. (Workers' : 
Compensation Appeal Board), :  No. 561 C.D. 2021
                Respondent : 

# O R D E R

AND NOW, this 2nd day of November, 2022, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated April 28, 2021, is hereby AFFIRMED.

 

_____
ELLEN CEISLER, Judge